IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

CODY LACY, *et al.*,                          :

      Plaintiffs,                        :      Case No. 3:11-cv-52

                                  :

      vs.                                :      JUDGE WALTER HERBERT RICE

REDDY ELECTRIC CO., *et al.*,               :

      Defendants

---

DECISION AND ENTRY SUSTAINING PLAINTIFFS' MOTION TO CONDITIONALLY
CERTIFY THE CASE AS A COLLECTIVE ACTION (DOC. #24); DIRECTING
COUNSEL TO FILE JOINT PROPOSED NOTICE AND OPT-IN CONSENT FORM
WITHIN 10 DAYS OF THE DATE OF THIS DECISION AND ENTRY; CONFERENCE
CALL SET

---

Plaintiffs Cody Lacy and Kyle Syx bring this collective action, on behalf of

themselves and all others similarly situated, against Reddy Electric Company

("Reddy") and its Vice President, Jeff Eldridge, seeking relief under the Fair Labor

Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.*, and Ohio's Minimum Fair Wage

Standards Act, Ohio Revised Code Chapter 4111, for unpaid wages and overtime

compensation.  This matter is currently before the Court on Plaintiffs' Motion to

Conditionally Certify the Case as a Collective Action.  Doc. #24.

I.      **Background and Procedural History**

Plaintiffs Cody Lacy and Kyle Syx were previously employed as hourly

workers by Reddy Electric Company, located in Xenia, Ohio.  They were assigned

to job sites located approximately one and a half hours away from there.  Rather than drive their own vehicles to those job sites, they met at the shop in Xenia and rode with other employees to the job sites in company vehicles.

Prior to leaving the shop, they often loaded the company vehicles with equipment and materials that would be needed that day at the job sites.  At the end of the day, they returned to the shop and often unloaded equipment they had brought back from the job sites.  Although they were paid for the time spent at the sites, they were not paid for the time spent loading and unloading the company vehicles, or for the time it took them to travel from the shop to the job sites.

On March 2, 2011, Lacy filed suit against Reddy and its Vice President, Jeff Eldridge, seeking recovery of unpaid wages and overtime compensation.[1]  Doc. #3.  On June 6, 2011, Lacy filed a First Amended Collective Action Complaint on behalf of himself and all others similarly situated.  He seeks to represent a class of "all former and current apprentice and journeyman electricians employed by Defendants during the preceding three-year period," "who worked in excess of 40 hours per week and were not compensated for overtime worked."   Doc. #14, at ¶¶ 13, 15.  On June 16, 2011, Syx filed his written consent to become a party plaintiff.  Doc. #17.

Plaintiffs allege that Reddy owes them money for: (1) time spent, at the

_____

[1]  Eldridge allegedly had a significant ownership interest in the company and determined salaries and pay scales.  Am. Compl. ¶9.

2

beginning of the day, loading company vehicles at the shop site with equipment needed at the job sites; (2) time spent driving in, or riding in, the loaded company vehicles from the shop site to the job sites and back again; and (3) time spent unloading the company vehicles at the shop site at the end of the day. Plaintiffs further allege that Reddy owes them money for hours they spent at weekend training classes that were not part of a bona fide apprenticeship program.

On September 6, 2011, Plaintiffs filed a Motion to Conditionally Certify the Case as a Collective Action under the FLSA, 29 U.S.C. § 216(b). Plaintiffs also ask the Court to approve the Collective Action Notice attached to the Motion, and to direct Defendants to produce the addresses of any putative members of this collective action. Doc. #24. Plaintiffs' motion is now fully briefed.

## II.  Relevant Law

The FLSA permits an employee to maintain an action against an employer on behalf of similarly situated employees. 29 U.S.C. § 216(b). However, in contrast to the "opt out" procedures governing some class actions, as set forth in Federal Rule of Civil Procedure 23, the FLSA contains an "opt in" procedure. The statute provides that "[n]o employee shall be a party plaintiff to any such action unless he gives his consent in writing . . . and such consent is filed in the court in which such action is brought." 29 U.S.C. § 216(b).

The Supreme Court has held that, in order to help identify similarly situated employees and notify them of their right to "opt in," district courts may facilitate

3

discovery of the names and addresses of those employees and may monitor preparation and distribution of the notice of the collective action. *Hoffman-LaRoche, Inc. v. Sperling*, 493 U.S. 165, 169-72 (1989). Nevertheless, because of the potential for abuse, the court must be careful to guard against "the 'stirring up' of litigation through unwarranted solicitation." *Severtson v. Phillips Beverage Co.*, 137 F.R.D. 264, 266-67 (D. Minn. 1991).

Therefore, prior to authorizing such notification, the court must determine "whether plaintiffs have shown that the employees to be notified are, in fact, 'similarly situated.'" *Comer v. Wal-Mart Stores, Inc.*, 454 F.3d 544, 546 (6th Cir. 2006). Because this inquiry usually takes place at the beginning of discovery, the standard for conditional certification of a collective action is "fairly lenient." Courts generally require only a "modest factual showing" that the plaintiff's position is similar to that of other employees. *Id.* at 546-47 (quoting *Pritchard v. Dent Wizard Int'l*, 210 F.R.D. 591, 595 (S.D. Ohio 2002), and *Moriskey v. Public Serv. Elec. & Gas Co.*, 111 F. Supp.2d 493, 497 (D.N.J. 2000)).

No minimum number of similarly-situated employees is required for conditional certification. As one court has noted, collective actions have been certified based on no more than a couple of declarations and a deposition transcript. *McNelley v. Aldi, Inc.*, No. 1:09CV1868, 2009 WL 7630236, at *4 (N.D. Ohio Nov. 17, 2009) (citing *Murton v. Measurecomp, LLC*, No. 1:07CV3127, 2008 WL 5725631 (N.D. Ohio June 9, 2008)).

4

Conditional certification is meant only to aid in identifying similarly situated employees.  It is not a final determination that the case may proceed as a collective action.  After the opt-in forms have been filed and discovery is complete, a defendant may file a motion for decertification.  At that point, the court examines with much stricter scrutiny the question of whether these other employees are, in fact, similarly situated.  *Comer*, 454 F.3d at 546-47.

## III. Analysis

On September 6, 2011, Plaintiffs filed their Motion to Conditionally Certify the Case as a Collective Action.  Eight days later, on September 14th, Defendants took Plaintiffs' depositions.  After requesting and being granted an extension of time to respond to Plaintiffs' motion, Defendants filed their responsive memorandum on October 14, 2011.  In support of their response, Defendants filed Plaintiffs' depositions with the Court.

### 1. Court Will Not Consider Merits of Plaintiffs' Claims At This Juncture

In their response, Defendants argue that "Plaintiffs' deposition testimony conclusively demonstrates that they cannot prevail on their individual claims." Doc. #31, at 14.  Defendants maintain that, under the circumstances presented here, the time Plaintiffs spent loading and unloading the company vehicles, traveling to the job sites, and attending training classes is simply not compensable under the FLSA.  According to Defendants, because Plaintiffs' claims lack merit,

5

Defendants should not be subjected to the burdens of a collective action.

Plaintiffs deny that the claims lack merit; they maintain that Defendants have misconstrued the nature of those claims.  In any event, as Plaintiffs correctly point out in their reply brief, the merits of the claims are not currently at issue. The question of whether the proposed class is "similarly situated . . . does not touch upon the merits of plaintiffs' claims."  *Creely v. HCR Manorcare, Inc.*, 789 F. Supp.2d 819 (N.D. Ohio 2011)  "It is not the role of the Court at this stage of the proceedings to decide the case on the merits."  *Jimenez v. Lakeside Pic-N-Pac, LLC*, No. 1:06-CV-456, 2007 WL 4454295, at *3 (W.D. Mich. Dec. 14, 2007). To do so at the juncture, when Plaintiffs have conducted little or no discovery, would be unfair.

> Requiring any more factual support from Plaintiff at this early stage, or weighing [Defendant's] competing factual assertions, would intrude improperly into the merits of the action, essentially imposing a burden upon Plaintiff to prove the factual predicates of his claim as a precondition to obtaining preliminary conditional certification. It is well-settled that no merits-based inquiry is appropriate at this stage. *See, e.g., Sipas v. Sammy's Fishbox, Inc.*, No. 05 Civ. 10319, 2006 WL 1084556, at *2 (S.D.N.Y. Apr. 24, 2006); *Realite v. Ark Restaurants Corp.*, 7 F. Supp.2d 303, 307 (S.D.N.Y.1998) ("Even if plaintiffs' claims turn out to be meritless or, in fact, all the plaintiffs turn out not to be similarly situated, notification at this stage, rather than after further discovery, may enable more efficient resolution of the underlying issues in this case.") (internal citations omitted).

*Murton v. Measurecomp, LLC*, No. 1:07CV3127, 2008 WL 5725631, at *5 (N.D. Ohio June 9, 2008).  Therefore, the Court does not intend to address Defendants' arguments concerning the merits of Plaintiffs' claims in the context of this

6

decision.[2]

### 2. "Hybrid" Standard Does Not Apply

Citing *Creely v. HCR Manorcare, Inc.*, 789 F. Supp.2d 819 (N.D. Ohio 2011), Defendants further argue that because some discovery has already taken place, Plaintiffs should be required to make a "modest 'plus' factual showing that there is a group of potentially similarly situated plaintiffs." In *Creely*, because the parties had conducted several months of limited discovery on the certification issue, the Court found that the plaintiffs should be held to a heightened "hybrid" standard, making a "showing beyond their original allegations."

The crucial difference between *Creely* and this case is that, herein, there has been no joint discovery on the certification issue. After Plaintiffs' motion was filed, Defendants took Plaintiffs' depositions and filed those with the Court, but Plaintiffs have conducted no discovery on the certification issue. Under these circumstances, the heightened standard for conditional certification, as set forth in *Creely*, is simply inapplicable.

### 3. Plaintiffs Have Made a "Modest Factual Showing" That a Class of Similarly Situated Employees Exists

The only question at this point is whether Plaintiffs have made a "modest

---

[2] The Court does not mean to imply that the merits of a plaintiff's claims may *never* be considered in deciding whether to conditionally certify a case as a collective action. An employer should not be subjected to the burdens associated with a collective action if it is obvious that the plaintiff's individual claims are simply not viable. This, however, is not such a case.

factual showing" that they are similarly situated to other Reddy employees with respect to the allegations in the Amended Complaint.  The Court finds that Plaintiffs have satisfied this slight burden.

The Amended Complaint alleges that Defendants violated Cody Lacy's rights under the FLSA and state law by failing to pay him for hours spent loading and unloading company vehicles at the shop site, for hours spent transporting personnel, equipment and materials in the company vehicle to the job site, and for hours spent attending training sessions on the weekends.  Lacy maintains that other Reddy employees are similarly situated:

> 13. Plaintiff brings his FLSA claims pursuant to 29 U.S.C. § 216(b) as a representative action on behalf of the following opt-in classes: "All current and former Reddy Electric Co. apprentice and journeyman electricians who worked in excess of 40 hours per week and were not compensated for overtime worked."

> 14. The Plaintiff is similarly situated to all former and current apprentice and journeyman electricians described in the above class.

> 15. The Plaintiff seeks to represent a class of all former and current apprentice and journeyman electricians employed by Defendants during the preceding three-year period.

Am. Compl. ¶¶ 13-15.

In support of their motion, Plaintiffs Lacy and Syx have each submitted a declaration, under penalty of perjury, stating that they believe that they are similarly situated to the putative class because, during their employment, they: (1) were hourly, non-exempt employees; (2) were not paid at one and one-half times

their regular rate of pay for all hours worked in excess of 40 hours in one workweek; (3) were not paid for performing work before arriving at the jobsite; and (4) were not paid for performing work after leaving the jobsite.  Lacy Decl. ¶ 5; Syx Decl. ¶5.

If the Court were looking at only the Amended Complaint and Plaintiffs' declarations, the Court would very likely overrule Plaintiffs' Motion for Conditional Certification.  Those documents contain nothing more than conclusory allegations that other Reddy employees are similarly situated.  Specific allegations concerning those other employees are sorely lacking.  It is Plaintiffs' sworn deposition testimony, submitted to the Court by *Defendants*, and cited by Plaintiffs in their reply memorandum, that fills in the necessary gaps and provides the justification for the conditional certification.[3]

Plaintiffs testified that the Reddy employees clocked in when they arrived at the job sites and clocked out before they left.  Lacy Dep. at 10, 19; Syx Dep. at 14.  The job sites were located about an hour and a half from Reddy's shop site in Xenia.  Lacy Dep. at 14; Syx Dep. at 8.  In order to save money on gas, employees would meet at the shop site and ride together in company vehicles to the job sites.  Syx Dep. at 8.

---

[3] As previously noted, the fact that Defendants took these depositions does not subject Plaintiffs to an increased burden of proof.  Nevertheless, since the depositions have been filed with the Court and cited by Plaintiffs in their reply memorandum, there is no reason the Court cannot consider the substance of those depositions in ruling on the pending motion.

9

Lacy testified that Jacob Burns often helped him load the company vehicle at the shop site in Xenia prior to leaving for the job site at Talawanda. They would load whatever the foreman told them was needed at the job site for that particular day -- things like anchor bolts, pipe, conduit, a gang box, concrete blankets, and other boxes of material. Burns would then ride with Lacy in the company vehicle to the job site. At the end of the day, after clocking out, they would sometimes take broken tools and empty spools of wire back to the shop site and unload them there before going home. Lacy Dep. at 11, 14-16, 18-19, 26, 28-29.

In a similar vein, Syx testified that seven or eight other Reddy employees often rode with him in a company van from the shop site to the job site at Arcanum-Butler, including Doug Brooks, Jeff Graham, "Steve," and Matt Johnson. Syx Dep. at 9, 26. Approximately once each week, at the request of the foreman, they would load equipment such as wire, boxes and mud rings, into the company van prior to leaving for the job site. They also occasionally took extra material from the job site back to the shop site at the end of the day. Syx Dep. at 10-13, 15.

Likewise, when Syx worked at the Talawanda job site, he would travel with other employees, including Doug Baker, Shawn Beringer, Doug Brooks and Dakota Lacy,[4] to the job site in a company car. Approximately once or twice each week,

_____

[4] Dakota Lacy and Plaintiff Cody Lacy are not the same person. Syx Dep. at 25.

they would load tools and other materials into the car at the shop prior to leaving for the job site. Syx Dep. at 17-20, 24-25.

It appears that these other employees were employed under the same terms and conditions as Lacy and Syx, *i.e.*, they were not paid for the time spent loading and unloading the company vehicles or for the time spent traveling in those loaded vehicles to the job sites. Syx testified that to the best of his knowledge, his co-workers did not get paid for the time spent traveling to or from the job sites. Syx Dep. at 23. Lacy testified that he and his co-workers often complained about this. Lacy Dep. at 20.

With respect to Plaintiffs' allegations that Reddy failed to pay them for their attendance at training classes on weekends, Lacy testified that other Reddy employees participated in those training classes on a rotating basis. Lacy Dep. at 30. The sign-in sheet for September 18, 2010, confirms that at least two dozen Reddy employees were in attendance on that particular day. Ex. 4 to Lacy Dep.

The Court finds that Plaintiffs, mainly through their deposition testimony, have made a "modest factual showing" that they are similarly situated to other Reddy employees with respect to the allegations in the Complaint, and that conditional certification as a collective action is therefore warranted. This conditional certification is not a final determination that this case may proceed as such. At the close of discovery, Defendants may file a motion to decertify the collective action, if such a motion is deemed warranted by them.

11

IV.    **Notice to Putative Class Members**

Having sustained Plaintiffs' Motion to Conditionally Certify the Case as a Collective Action, the Court turns to the question of how similarly situated employees should be notified of their right to opt in.  Plaintiffs have attached a proposed "Notice of Right to Join Minimum Wage and Overtime Case Against Reddy Electric Co. and Jeff Eldridge" and a proposed "Opt-In Consent Form" as exhibits to their motion.  Defendants, unhappy with Plaintiffs' draft, attached their own versions of the Notice and the Opt-In Consent Form to their Memorandum in Opposition to Plaintiffs' Motion.

The Court, having reviewed both drafts, prefers Defendants' draft for at least three reasons.  <u>First</u>, Defendants' proposed class definition more appropriately limits the class to non-exempt employees employed by Reddy within the past three years.[5]  More specifically, Defendants propose that the class be defined as follows:

> All current and former non-exempt, hourly apprentice or journeymen electricians employed by Reddy Electric Co. who loaded and/or loaded Company vehicles at the Xenia office prior to or after your regular shift, rode in Company vehicles after loading that Company vehicle, drove the Company vehicle to or from the Company's Xenia office to a jobsite while also transporting employees, materials, and/or equipment, or attended mandatory training classes required by the Company all for which you did not receive pay, regardless if you reported that you worked 40 hours during any period within the last three years.

Defendants' Proposed Notice, at ¶ 2, "Who May Join this Lawsuit."

──────────────────

[5] The statute of limitations for claims of willful violations of the FLSA is three years.  29 U.S.C. § 255(a).

<u>Second</u>, Defendants' draft more accurately informs the recipients of the purpose of the Notice, and what they can reasonably expect if they choose to opt in. *See* Defendants' Proposed Notice at ¶ 1, "Purpose of this Notice."

<u>Finally</u>, in the Court's view, Defendants' draft better reflects a sense of "judicial neutrality" and better "avoid[s] even the appearance of judicial endorsement of the merits of the action." *Hoffman-LaRoche*, 493 U.S. at 174. It specifically states, in bold print, that "[t]he Court neither encourages you nor discourages you from joining this lawsuit." Defendants' Proposed Notice, at p. 1.

Using Defendants' draft as a starting point, the Court therefore directs counsel to confer in an attempt to reach full agreement on appropriate language for the Notice and the Opt-In Consent Form. Within **10 days** of the date of this Decision and Entry, counsel shall file that joint draft with the Court for the Court's final approval. Any specific language that remains in dispute shall be duly noted, and will be promptly resolved by the Court.

Prior to granting final approval of the Notice, the Court will set a deadline for similarly situated employees to opt in as plaintiffs. That deadline will be included in the Notice to be distributed to all potential members of this collective action.

## V. Discovery Sought

Within 10 days of the date of this Court's Order granting final approval of the Notice and Opt-In Consent Form, Defendants shall provide Plaintiffs' counsel with the names, last known addresses and phone numbers of all current and former employees who might be eligible to opt in to this collective action.

**VI.    Conclusion**

The Court finds that Plaintiffs have made a "modest factual showing" that they are similarly situated to other Reddy employees with regard to the allegations set forth in the First Amended Collective Action Complaint.  The Court therefore SUSTAINS Plaintiffs' Motion to Conditionally Certify the Case as a Collective Action, Doc. #24.

Within 10 days of the date of this Decision and Entry, counsel shall submit a joint draft of a proposed Notice to potential plaintiffs about this collective action, to the Court, along with a proposed Opt-In Consent Form.  Any remaining disputes concerning specific language shall be noted in that draft, and will be resolved by the Court.

Within 10 days of the date of this Court's order granting final approval of the Notice and Opt-In Consent Form, Defendants shall provide Plaintiffs' counsel with the names, last known addresses and phone numbers of all current and former employees who might be members of the collective action.

Counsel will take note that a telephone conference call will be convened between Court and counsel for the purpose of determining the viability of the present trial date of January 14, 2013 and the need for the February 2, 2012,

14

class certification hearing, in light of this Court's opinion rendered herein, at 4:30

p.m. on Thursday, December 22, 2011.

Date:  December 9, 2011

WALTER HERBERT RICE
UNITED STATES DISTRICT JUDGE


Copies to: Counsel of Record