# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION AT DAYTON

| | | |
|---|---|---|
| **CODY LACY, et al.** | : | Case No. 3:11-cv-0052 |
| | : | |
| **Plaintiffs,** | : | (Judge Walter Herbert Rice) |
| | : | |
| **v.** | : | |
| | : | **DEFENDANTS' MOTION FOR** |
| **REDDY ELECTRIC CO., et al.,** | : | **SUMMARY JUDGMENT** |
| | : | |
| **Defendants.** | : | |

Defendants Reddy Electric Company and Jeffrey Eldridge (hereinafter "Defendants"), pursuant to Fed. R. Civ. P. 56(C), move this Court for summary judgment against Plaintiffs Cody Lacy and Kyle Syx (hereinafter "Plaintiffs"). For the reasons set forth in the accompanying memorandum, Defendants are entitled to judgment as a matter of law on all Plaintiffs' claims.

Respectfully submitted,

s/ C. Mark Kingseed
C. Mark Kingseed (0024597)
COOLIDGE WALL CO., L.P.A.
33 W. First Street, Suite 600
Dayton, OH 45402
Phone: 937-223-8177
Fax: 937-223-6705
E-mail: kingseed@coollaw.com

TRIAL ATTORNEY FOR DEFENDANTS
REDDY ELECTRIC CO. AND
JEFFREY ELDRIDGE

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................ iv

MEMORANDUM IN SUPPORT ........................................................................ 1

PROCEDURAL HISTORY ................................................................................ 2

UNDISPUTED FACTS ...................................................................................... 4

    A. The Nature of Reddy Electric's Business .................................................. 4

        Reddy Electric is a general purpose electrical contractor doing business throughout Kentucky and Ohio.

    B. Reddy's Travel Policies ................................................................................ 5

        The Company's written policy, which Plaintiffs acknowledged they understood, was that all employees had to provide their own transportation to the construction work sites. Employees are paid once they begin to work at the construction site.

    C. Plaintiffs, for their Own Convenience, Ask Reddy to Use Company Transportation to the Work Sites ........................................................ 5

        Each Plaintiff separately, in an effort to avoid gasoline expense and wear and tear on their personal vehicles approached Reddy and asked for the opportunity to use Company provided transportation from the Xenia headquarters to construction work sites in Oxford and Arcanum, Ohio. The Company acquiesced in this request as an accommodation to the Plaintiffs.

    D. Plaintiffs Periodically Loaded Small Amounts of Material into the Company Vehicle at Xenia Before Leaving for the Work Site ........................................ 8

        Each Plaintiff, occasionally, loaded very small amounts of material into a Company vehicle at the Xenia headquarters before riding or driving to the construction work site. The amount of this occasional work was minimis (no more than five to fifteen minutes).

    E. Log in Procedures at the Company .......................................................... 9

        The Company used an electronic log in procedure. At the construction work sites, employees, under a supervisor's supervision, logged in and logged out using a Company provided cell phone. At the shop in Xenia where Plaintiff Lacy worked for a period of time, each employee, without management supervision, logged in and out at his or her convenience.

    F. Employees Received an Extra 15 Minutes Pay at the Construction Sites ........................ 10

While working at the construction site at Arcanum and Oxford, employees, including each of the Plaintiffs, were given an uninterrupted forty-five minute lunch break. The employees, including the Plaintiffs, were only docked for thirty minutes of this time period. Accordingly, each Plaintiff received an extra fifteen minutes pay at the construction sites.

ARGUMENT ........................................................................................................ 10

A. Standard of Review ........................................................................... 10

B. Travel Time to and from the Work Site is Not Compensable Under the Applicable Statutes. ........................................................................... 11

Travel time to and from the principal place of business is not compensable under the Fair Labor Standards Act, the Portal to Portal Act, and the Employee Commuting Flexibility Act. Pursuant to those statutes, employees who are provided with Company vehicles to get to the principal place of employment are not paid for commuting time provided that the commuting arrangement is pursuant to an agreement between the parties and that the commute is within the normal commuting area.

Statutes:  29 U.S.C. § 201
          29 U.S.C. § 251
          29 U.S.C. § 254(a)
          Fed. R. Civ. P. 56(c)
          O.R.C. § 4111
          Ohio Revised Code § 4113.15

a. The Company Vehicles were Provided Pursuant to an Agreement between the Parties ........................................................................... 14

In this case, the Company vehicles were made available pursuant to an agreement between the Plaintiffs and the Defendants. Plaintiffs individually requested permission to travel in Company vehicles and the Company agreed to do so.

*Chambers v. Sears Roebuck & Co.*, 428 Fed. Appx. 400 (5th Cir. 2011)

*Singh v. City of New York*, 524 F.3d 361 (2d Cir. 2008)

b. The Travel to and from the Work Site was Within the Normal Commuting Area ........................................................................... 15

The travel to and from the construction worksites in Xenia and Arcanum is well within the normal commuting area for Reddy Electric. Reddy Electric performs work in a two state area throughout Ohio and Kentucky.

*Chambers v. Sears Roebuck & Co.*, 428 Fed. Appx. 400 (5th Cir. 2011)

*Singh v. City of New York*, 524 F.3d 361 (2d Cir. 2008)

C. Loading Supplies is not Compensable Because it is Incidental to Commuting and the Time was *De Minimis* ........................................................... 16

*Chambers v. Sears Roebuck & Co.*, 428 Fed. Appx. 400 (5th Cir. 2011)

*Singh v. City of New York*, 524 F.3d 361 (2d Cir. 2008)

While the commuting time itself is not compensable, the small amounts of time spent loading small boxes of supplies into the Company vehicles occasionally is also not compensable.

a. The Loading of Supplies was Incidental to Use of the Company Vehicle ....................................................................................... 17

Under the terms of the Employee Commuting Flexibility Act, loading of supplies into a Company provided vehicle is considered incidental to the commute and is therefore noncompensable.

b. Plaintiffs' *De Minimis* Time Loading Trucks was Not Compensable ....................... 19

In addition, the minimis amount of time spent occasionally loading supplies into the truck is not compensable under the Fair Labor Standards Act.

D. As an Alternate Theory, the Time at Issue is Not Compensable Because the Commute Time was Not Primarily to Benefit the Employer ........................................... 20

In addition to the noncompensability of the damages sought under the Employer Commuter Flexibility Act, the time is not compensable because the commute time was not primarily to benefit the employer.

*Singh v. City of New York*, 524 F.3d 361 (2d Cir. 2008)

E. Plaintiffs Were Properly Compensated for All Time Worked Under Defendants' Lawful Rounding Practice.......................................................................... 21

F. Since Plaintiffs Were Paid All Wages Owing, the R.C. 4113.15 Claim in Count Five Necessarily Fails ....................................................................................... 23

CONCLUSION. ......................................................................................................................... 24

CERTIFICATE OF SERVICE ................................................................................................. 25

# TABLE OF AUTHORITIES

**Cases**

29 C.F.R. § 785.48 ................................................................................................ 21

29 U.S.C. § 254(a)(2) ........................................................................................... 19

*Adair v. Wis. Bell, Inc.*, No. 08-C-280, 2008 U.S. Dist. LEXIS 68942 (E.D. Wis. Sept. 11, 2008) ..................................................................................................... 22

*Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680 (1946) ................................... 19, 23

*Berger v. The Cleveland Clinic Foundation*, No. 1:05CV1508, 2007 U.S. Dist. LEXIS 1508, (N.D. Ohio Sept. 29, 2007) ............................................................. 12

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) ...................................................... 11

*Chambers v. Sears Roebuck & Co.*, 428 Fed. Appx. 400 (5th Cir. 2011) ....... 15, 16, 17, 18, 19, 20

*Contini v. United Trophy Mfg.*, No. 6:06-cv-432-Orl-18UAM, 2007 U.S. Dist. LEXIS 42510, (M.D. Fla. June 12, 2007) ............................................................. 22

*Creech v. Ohio Cas. Ins. Co.*, 944 F. Supp. 1347 (S.D. Ohio 1996) ....................... 11

*Dillworth v. Case Farms Processing, Inc.*, No. 5:08CV1694, 2009 U.S. Dist. LEXIS 76947 (N.D. Ohio Aug. 27, 2009) ............................................................. 11

*East v. Bullock's, Inc.*, 34 F. Supp. 2d 1176 (D. Ariz. 1998) .................................. 22

*Eddings v. Health Net, Inc.*, No. CV10-1744-JST, 2011 U.S. Dist. LEXIS 115989 (C.D. Cal. Mar. 23, 2012) .................................................................................. 22

*Lindow v. United States*, 738 F.2d 1057 (9th Cir. 1984) ........................................ 23

*Rutti v. Lojack Corp., Inc.*, 596 F.3d 1046 (9th Cir. 2010) .................................... 18

*Singh v. City of New York*, 524 F.3d 361 (2d Cir. 2008) ................................ 18, 19, 20, 21

*Sloan v. Renzenberger, Inc.*, No. 10-2508-CM-JPO, 2011 U.S. Dist. LEXIS 41018 (D. Kan. Apr. 15, 2011) ..................................................................................... 22

*Smith v. Aztec Well Servicing Co.*, 462 F.3d 1274 (10th Cir. 2006) ........................ 16

*Thomas v. Speedway SuperAmerica, LLC*, 506 F.3d 496 (6th Cir. 2007) ................... 11

*Vega v. Gasper*, 36 F.3d 417 (5th Cir. 1994) ....................................................... 16

*Whisman v. Ford Motor Co.*, 157 F. Appx. 792 (6th Cir. 2005) ............................. 12

*Whitt v. Lockheed Martin Util. Servs., Inc.*, 209 F. Supp. 2d 787 (S.D. Ohio 2002) ............. 10, 11

**Statutes**

29 U.S.C. § 201 ................................................................................................... 11

29 U.S.C. § 251 ................................................................................................ 1, 13

29 U.S.C. § 254(a) ....................................................................................... 12, 13, 17

Fed. R. Civ. P. 56(c) ........................................................................................... 10

O.R.C. § 4111 ............................................................................................ 11

Ohio Revised Code § 4113.15 ...................................................................... 2

## MEMORANDUM IN SUPPORT

Plaintiffs' claims, in addition to being legally insufficient, personify the old adage that "No good deed goes unpunished."

Plaintiffs are both recent high school graduates who were hired as construction workers at Reddy Electric, a Xenia based full service electrical contractor. Both Plaintiffs had worked at Reddy Electric as co-op students prior to graduation. Both knew that Company policy required them to provide their own transportation to their assigned construction work sites at Arcanum and Oxford, Ohio. After several weeks of driving their own vehicles, both Plaintiffs sought to avoid the gasoline expense and wear and tear on their vehicles from the daily 2.5 to 3 hour round trip. Both Plaintiffs asked the Company for permission to ride in or drive Company vehicles from the Xenia office to the construction work sites if possible. The Company, solely as an accommodation to the Plaintiffs, agreed. From time to time (and never for more than 5 to 15 minutes), each Plaintiff may have helped load several small boxes of supplies in the vehicle before traveling to the work site.[1] Now each Plaintiff demands 3 extra hours pay (the approximate round trip travel time) for each day they traveled in Company vehicles to and from the construction sites.

Plaintiffs' travel time claims are barred by the terms of the Portal-to-Portal Act as amended by the Employee Commuting Flexibility Act ("ECFA") of 1996, which provides that travel from home to the place of the employee's principal place of work activity is not compensable. 29 U.S.C. § 251, *et seq*. Plaintiffs' claim that occasionally loading supplies into a

---

[1] Many of the Plaintiffs' factual claims are incorrect. For example, Jaycob Burns, who rode with Plaintiff Lacy every day, denies that Lacy loaded supplies, except on very infrequent occasions. See Affidavit of Jaycob Burns ("Burns Aff.") at ¶ 5, attached as Exhibit A. But, for purposes of this Summary Judgment Motion only, Defendants will accept as true all the factual assertions made in Plaintiffs' depositions. Even if everything Plaintiffs say is true, under the law they are not entitled to additional compensation.

Company vehicle turns the trip into a compensable event is specifically rejected in the Legislative History of the ECFA, which provides that:

> The employer can require the employee to load the vehicle, to fuel the vehicle, to maintain the vehicle, to take job assignments, or to perform any other duty "incidental" to the commute without paying the employee for those services.

H.R. Rep. No. 104-585 at 14.

In addition, under a long line of case law, *de minimis* activities such as the occasional loading of supplies in a Company vehicle is not compensable under the Fair Labor Standards Act.

Plaintiffs have also recently added a factually erroneous claim that the Company did not properly calculate their hours worked at the job site itself. Employers are permitted to "round" time, so long as the rounding is performed in a neutral fashion. The evidence submitted in this Memorandum establishes that Plaintiffs were paid in full for all the hours worked.

## PROCEDURAL HISTORY

The original Complaint was filed on March 2, 2011 by Cody Lacy, individually, against Reddy Electric and Jeffrey Eldridge. (Doc. 3.) The Complaint alleged that Defendants did not pay Plaintiff for time spent in weekend training classes,[2] for all time spent loading or unloading equipment at the beginning or end of their work shift, or for traveling to and from the Xenia central office to construction job sites, all in violation of federal and Ohio law, and Ohio's Prompt Pay Act, R.C. § 4113.15. Compl. at ¶¶ 1, 16, 23, 29, 36. Lacy further alleged that

---

[2] Plaintiffs have now withdrawn all claims related to the weekend training classes. Pls.' Mot. for Order to File Second Amended Compl. (Doc. 51) at 3.

Reddy violated the Ohio Minimum Wage Act by failing to produce "requested records" in January, 2011. *Id.* at ¶¶ 28-29.[3]

On June 6, 2011, Plaintiff Lacy filed a First Amended Complaint for Collective Action on behalf of himself and "all others similarly situated." (Doc. 14.) The First Amended Complaint repeated the original claims, but asserted the claims were suitable for opt-in class treatment under the Fair Labor Standards Act.

On September 6, 2011, Plaintiffs moved to conditionally certify the class. (Doc. 24.) Defendants' opposition brief (Doc. 31) noted that Plaintiffs' deposition testimony demonstrated that class treatment was not appropriate and that Plaintiffs did not even have valid individual claims. On December 9, 2011, the Court declined to address the merits of Plaintiffs' claims and conditionally certified the case as a collective action. (Doc. 34.)

On December 21, 2011, the parties presented to the Court a Revised Notice of Agreed to Opt In Notice (the "Notice") which had been jointly negotiated between counsel. (Doc. 36.) The Notice asked the prospective class members to self identify as follows:

I was not paid for the following (check all which apply):

☐ loading and/or unloading Company vehicles at the Xenia office prior to or after my regular shift;

☐ riding in Company vehicles after loading or before unloading that Company vehicle at the Xenia office;

☐ driving the Company vehicle from the Company's Xenia office to or from a jobsite while also transporting employees, materials, and/or equipment; or

☐ attending mandatory training classes required by the Company while not being, or prior to becoming, a registered apprentice

---

[3] The payroll records have all been provided in discovery and it is unclear if Plaintiffs contend they are entitled to relief for the alleged failure to produce records. There is no provision under Ohio law for damages for a violation of the records production provision. In this case, after Plaintiffs' counsel requested certain payroll records, Defendants' counsel entered into unsuccessful settlement discussions and the parties agreed to defer production. After the suit was filed, the documents were provided in discovery. See, Affidavit of Laura Wilson, Defendants' former counsel, attached as Exhibit B.

Opt-in notices were mailed to all potential class members in December 2011. Five additional individuals opted in, but all later decided to withdraw from the case. (Docs. 48-49.)[4]

On July 10, 2012, Plaintiff filed a Motion to file a Second Amended Complaint (Doc. 51), abandoning the weekend training theory and adding the new theory that Defendant Reddy Electric did not properly calculate their time after they logged in at the construction worksite when it calculated daily pay.

The Court granted Plaintiffs permission to file a Second Amended Complaint on August 10, 2012. (Doc. 56). Defendants filed their Answer to Plaintiffs' Second Amended Complaint on August 24, 2012. (Doc. 58).

## UNDISPUTED FACTS

### A. The Nature of Reddy Electric's Business

Defendant Reddy Electric Company ("Reddy" or "the Company") is a full service electrical contractor. See, Ex. 1 to Deposition of Plaintiff Cody Lacy ("Lacy Dep.") (Docs. 27 & 67).[5] Defendant Jeffrey Eldridge is Reddy's Vice President. Amended Compl. at ¶ 9. Reddy's main office and headquarters is in Xenia, Ohio. Id. at ¶ 7. Construction workers such as Plaintiffs typically are assigned to work at various work sites, performing electrical work as part of construction or renovation projects. Lacy Dep. Ex. 1 at p. 8. Their principal duties, i.e., the reason they are hired, is to work at the construction sites. Affidavit of Jeffrey Eldridge ("Eldridge Aff."), attached as Exhibit C, at ¶ 3.

---

[4] Defendants by separate motion are moving for decertification of the class.

[5] All depositions cited have been filed with the Court. Plaintiffs Lacy and Syx were both deposed on September 14, 2011 (Docs. 27 & 28, respectively) and the depositions continued on August 22, 2012 (Docs. 67 & 68, respectively).

The Company's normal business area includes the entire states of Ohio and Kentucky. Eldridge Aff. at ¶ 1. The numerous work locations outside the Xenia area in 2009-11 are listed in the Eldridge Affidavit.

**B. Reddy's Travel Policies**

Reddy provides a written Company Handbook ("Handbook") which contains Company policies. The Handbook (which was Exhibit 1 in the Cody and Syx depositions) describes the Company policy regarding transportation as follows:

Travel

1. An employee is expected to provide his/her own dependable transportation at his/her own expense to and from the job assignment.

Both Plaintiffs signed an acknowledgment that they received the Handbook, and both were familiar with the transportation requirement. Lacy Dep. at 34:5-17; 38:21—39:4; Deposition of Plaintiff Kyle Syx ("Syx Dep.") (Docs. 28 and 68) at 35:1-9; 40:7-14.

The Company does provide mileage reimbursement if an employee uses his own vehicle to drive to and from the work site and has to travel more than thirty (30) miles from his or her home. Deposition of Julie Jordan ("Jordan Dep.") at 48:6-9. This mileage reimbursement does not apply if the Company provides the transportation for the employee or if the employee car pools with a co-worker. *Id.* at 48:10—49:14.

**C. Plaintiffs, for their Own Convenience, Ask Reddy to Use Company Transportation to the Work Sites**

**1. Lacy**

Lacy began full-time employment with Defendant after his high school graduation in May, 2010. Lacy Dep. at 9:10-13. For a period of time, Lacy worked in the shop area of Company Headquarters in Xenia. *Id.* at 9:14—10:6. Thereafter, he was assigned to the project

at Talawanda High School in Oxford, Ohio.  *Id.* at 21:20-25; 10:6-7.  During the period he

worked at the shop, and for the first 6 weeks of employment at Talawanda, Lacy drove his own

vehicle to his assigned work site at Talawanda High School as per Company policy.  *Id.* at

10:18-23.

      Thereafter, while he was aware that the Company required employees to provide their

own transportation to the work site, Lacy asked the Company to make an exception for him:

> Q.     Why did you stop driving your own vehicle to Talawanda?
>
> A.     Because -- half my pay check was going to gas.  I couldn't afford it.
>
> Q.     Was this during the $4 a gallon business?
>
> A.     Yes, I couldn't afford it.  I had my insurance I had to pay, my truck payment still and so on and so forth.
>
> Q.     Was the decision to stop driving your own vehicle a decision that you made?
>
> A.     Yes.  I called Jeff [Eldridge]  and I said is there any way -- when is there something going down there  . . . .

Lacy Dep. at 11:2-14.

      Lacy admitted that he always had the option of driving his own vehicle to the work site.

> Q.     During this entire period again for when you were working full time, you had the option to drive your own vehicle to the job site, didn't you?
>
> A.     Right.
>
> Q.     And every single day you could have done that, correct?
>
> A.     Yes.

*Id*. at 21:1-7.

      Lacy claimed he physically drove the Company vehicle, a small two person truck with

one other employee, Jaycob Burns, to and from the work site.  Lacy Dep. at 16:11-24.  Lacy

admitted that during the drive/ride time "we stopped at Speedway to get coffee, snacks, fill up or do whatever we needed to do before we got down there." *Id*. at 30:2-12, Burns Aff. at ¶ 6.

### 2. Syx

Lacy's friend Kyle Syx began working for Reddy Electric after his high school graduation in early June 2010. Syx Dep. at 6:21-25. Mr. Syx worked at the Arcanum Butler worksite from June 2010 to December 2010 and at the Talawanda worksite from January 2011 to June 2011. Syx Dep. at 7:22—8:2. Like Lacy, Syx drove to the work site for a period, but then he also asked the Company to make an exception and allow him to drive or to ride in a Company vehicle.

> Q. Why did you decide to stop using your personal vehicle to go to the job site?
>
> A. To save on gas and wear and tear on my vehicle.
>
> Q. It was your choice wasn't it to take the Company van as opposed to driving your own vehicle, is that correct?
>
> A. It was a choice, yes.
>
> Q. You could have continued to drive your personal vehicle to Arcanum-Butler every day?
>
> A. Yes.
>
> Q. Did anyone at the Company tell you that you had to come to Xenia and take the Company van?
>
> A. No.

Syx Dep. at 8:20—9:8.

> Q. During this entire period, sir, when you were working at Arcanum-Butler and Talawanda, it was your choice to go to Xenia first, correct?
>
> A. Yes. It was a choice, yes.
>
> Q. You could have simply driven your own vehicle to the work site, right?

A.     Yes, if I wanted to risk the wear and tear on my old vehicle and spend the money on gas. Since I have an old vehicle and it's a truck, I would spend roughly twenty dollars a day.

Q.     You made the choice to come to the Xenia office to be transported in a Company vehicle in order to save wear and tear on your personal car; is that right?

A.     Yeah.

Syx Dep. at 20:22—21:11.

Syx said he actually drove an average of once per week and was a passenger in an eleven person van the other four days of the week. Syx Dep. at 13:20-25. After several weeks in the van, Syx rode or drove in a smaller vehicle. *Id.* at 18:13-15. Syx admitted he did not do any work in the vehicle during the three-hour round trip and that when he was not driving he would "[b]asically sit there and drink coffee or look outside, pass the time by watching stuff go by." *Id.* at 14:1-5.

### D. Plaintiffs Periodically Loaded Small Amounts of Material into the Company Vehicle at Xenia Before Leaving for the Work Site

Both Plaintiffs testified that on some occasions they would put material in the Company vehicle at Xenia before traveling to the worksite in the morning. Lacy contended he did this on 90% of the mornings. Dep. at 12:13-19.[6] Lacy contends this would take between 5 to 10 minutes. Syx testified he loaded material "maybe once per week" when he first began to ride in the Company van and that when he did so it would take from 5 to 15 minutes. Syx Dep. at 9:24—10:2. However, after a few weeks, Syx began driving or riding in a smaller vehicle to get to the work site and no longer loaded anything into the vehicle. *Id.* at 18:13-15, 20:18-21. Thus,

---

[6] There is a factual dispute on this point since his companion, Mr. Burns, stated that Lacy did not load supplies except on extremely rare occasions and never for more than a few minutes. Burns Aff. at ¶ 4. However, even assuming that Lacy's recollection is correct, under the law the time is not compensable.

based on his deposition testimony, Syx only loaded material once per week for five (5) to fifteen (15) minutes for several weeks during the one (1) year he worked at Reddy.

Both Plaintiffs further testified that occasionally they would transport junk material from the work site to Xenia in the Company vehicle and throw it out in the Xenia dumpster after the end of the work day. This unloading process would take approximately 10 minutes. Lacy Dep. at 28:16-20; Syx Dep. at 17:1-3.

### E. Log in Procedures at the Company

At Talawanda and Arcanum Butler, the Company used an electronic log in system. Individuals would use the supervisor's cell phone, under his supervision, to plug in their personal identification number, their work code and the system would then automatically track the log in time. At the end of the work day, the individuals would log out of the system using the same method. Affidavit of Cheryl Yankee ("Yankee Aff."), attached as Exhibit D, at ¶ 4.

The Company rounds up or down to the quarter hour based on fifteen (15) minute increments after the established start time at the construction site. For example, under the electronic system, if an individual logged in before the 7:00 a.m. starting time, the time would be rounded up to 7:00 a.m. when they actually began work. Conversely, if the employee logged in after the start time, he would be rounded to the nearest quarter hour increment. Yankee Aff. at ¶ 5. The system was designed and was implemented to be time neutral, *i.e.*, it would not result in a systematic way in either a decrease or an increase in paid time.

The log in process was slightly different for the shop where Mr. Lacy worked from September 2009 to April 2010. At the shop, the cell phone log in was accessible to employees in the warehouse area and employees logged in and logged out at their convenience. However, employees worked an actual shift from 7:30 a.m. to 4:30 p.m. with a one hour lunch break.

Employees were paid for the actual time working. Unless the supervisor assigned extra duties, the employees did not work more than forty (40) hours per week at the shop. Yankee Aff. at ¶ 9.

### F. Employees Received an Extra 15 Minutes Pay at the Construction Sites

At both the Arcanum Butler and the Talawanda worksites, employees, including Mr. Lacy and Mr. Syx, were given forty-five (45) uninterrupted minutes off for lunch. During that period, they were totally relieved of duties and were not expected or permitted to perform any work for the Company. Even though each employee, including Mr. Lacy and Mr. Syx, was given forty-five (45) minutes off, their pay was only docked for thirty (30) minutes per day. Yankee Aff. at ¶ 2. Lacy Dep. at 59:20—60:7; Syx Dep. at 58:15-17; 60:21-24; 74:16-20. Therefore, for each day that Mr. Lacy and Mr. Syx worked at the Arcanum Butler and Talawanda worksites, they were paid for an additional fifteen (15) minutes of time during which they did not perform any services or work for the Company.

## ARGUMENT

### A. Standard of Review

Summary judgment should be granted where the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits, show that there are no genuine issues of material fact that remain to be litigated and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Whitt v. Lockheed Martin Util. Servs., Inc.*, 209 F. Supp. 2d 787, 790 (S.D. Ohio 2002). The mere existence of some alleged factual disputes will not defeat an otherwise properly supported motion for summary judgment. *Whitt*, 209 F. Supp. 2d at 790. Summary judgment is "an integral part of the Federal Rules as a whole, which are designed to 'secure the just, speedy and inexpensive determination of every action.'" *Creech v. Ohio Cas.*

*Ins. Co.*, 944 F. Supp. 1347, 1352 (S.D. Ohio 1996) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986)).

The moving party bears the initial burden of showing the absence of genuine issues of material fact. *Whitt*, 209 F. Supp. 2d at 791. The evidence must be viewed in the light most favorable to the non-moving party. *Id.* Where the moving party meets its burden, summary judgment "is appropriate if the opposing party fails to make a showing sufficient to establish the existence of an element essential to the party's case and on which that party will bear the burden of proof at trial." *Id.* The existence of a "mere scintilla of evidence" in support of the non-moving party's position is not sufficient. Rather, "summary judgment is appropriate if the moving party establishes that there is insufficient evidence favoring the non-moving party for a jury to return a verdict for that party." *Creech*, 944 F. Supp. at 1352.

## B. Travel Time to and from the Work Site is Not Compensable Under the Applicable Statutes.

The first four of the five counts in Plaintiffs' Second Amended Complaint allege federal and Ohio minimum wage and overtime violations under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.,* and the Ohio Minimum Fair Wage Standards Act ("OMFWSA"), O.R.C. § 4111, *et seq.*

The FLSA and OMFWSA are indistinguishable with respect to Plaintiffs' minimum wage and overtime claims. Ohio's minimum wage and hour statute, "expressly incorporates the standards and principles found in the FLSA." *Dillworth v. Case Farms Processing, Inc.*, No. 5:08CV1694, 2009 U.S. Dist. LEXIS 76947, at *15 (N.D. Ohio Aug. 27, 2009) (quoting *Thomas v. Speedway SuperAmerica, LLC*, 506 F.3d 496, 501 (6th Cir. 2007)). Thus, it is interpreted similarly. *Id.* Thus, a "claim under § 4111.03(A) of the Ohio Minimum Fair Wage Standards Act is governed by the same standards as the FLSA." *Berger v. The Cleveland Clinic*

*Foundation*, No. 1:05CV1508, 2007 U.S. Dist. LEXIS 1508, at *55 (N.D. Ohio Sept. 29, 2007).

"Consequently, 'the merits of [Plaintiff's] federal and state overtime claims are indistinguishable.'" *Id.* (citing *Whisman v. Ford Motor Co.*, 157 F. Appx. 792, 796 (6th Cir. 2005)).

Under the FLSA, employees are entitled to be paid for hours worked and are entitled to overtime of time and one half for hours worked over 40 in one work week. The key factor of course is what is counted as "work time."

The travel time issues raised by Plaintiffs are governed by the Portal-to-Portal Act, 29 U.S.C. § 254(a), which provides that an employer is not required to pay an employee for activities prior to the start of working time such as:

(1) walking, riding, or traveling to and from the actual place of performance of the principal activity or activities which such employee is employed to perform, and

(2) activities which are preliminary to or postliminary to said principal activity or activities, which occur either prior to the time on any particular workday at which such employee commences, or subsequent to the time on any particular workday at which he ceases, such principal activity or activities.

29 U.S.C. § 254(a). One of the Portal-to-Portal Act's implementing regulations specifically provides that ordinary commuting from an employee's home to the work site is not compensable under the FLSA:

An employee who travels from home before his regular workday and returns to his home at the end of the workday is engaged in ordinary home to work travel which is a normal incident of employment. This is true whether he works at a fixed location or at different job sites. Normal travel from home to work is not work time.

29 C.F.R. § 785.35.

In 1996, to further clarify how to handle compensability of travel time when the employer provides transportation to the actual work site, Congress enacted the Employee

Commuting Flexibility Act of 1996 (29 U.S.C. § 251) ("ECFA"). The ECFA amended Section

4(a) of the Portal-to-Portal Act by adding the following language:

> For purposes of this subsection, the use of an employer's vehicle for travel by an employee and activities performed by an employee which are incidental to the use of such vehicle for commuting shall not be considered part of the employee's principal activities if the use of such vehicle for travel is within the normal commuting area for the employer's business or establishment and the use of the employer's vehicle is subject to an agreement on the part of the employer and the employee or representative of such employee.

29 U.S.C. § 254(a).

Prior to the 1996 amendment, the U.S. Department of Labor ("DOL") had issued

conflicting opinion letters in 1994 and 1995, respectively, regarding compensability of travel

time when employees were driving or riding in employer owned vehicles while commuting to or

from their work sites. The DOL had opined that the time spent traveling in an employer vehicle

to or from the first or last work assignment of the day was similar to traveling between jobs

during the day and therefore represented a principal activity, which must be compensated (as

opposed to the same travel in the employee's own vehicle which would not require

compensation). H.R. Rep. No. 104-585 at 2 (1996) .

After receiving many letters from Congress voicing concern and opposition to the DOL's

position, the DOL suspended enforcement of the 1994 opinion letter. The DOL then issued a

revised opinion letter in 1995 withdrawing the 1994 opinion letter and modifying its position on

the issue. *Id.* at 3. In its 1995 letter, the DOL opined that travel in an employer's vehicle to or

from the first and last work assignment of the day need not be compensated if certain conditions

were met.

In the legislative history of the ECFA, Congress made clear that the DOL's 1995 opinion letter placed too many requirements on employers.  This, coupled with the conflicting DOL opinion letters, prompted Congress to pass clarifying legislation. *Id*. at 4

In the House Report for H.R. 1227, the Employee Commuting Flexibility Act of 1996 as enacted, Congress stated:

> H.R. 1227 provides clarification regarding the use of an employer-provided vehicle for travel from an employee's home to the first work location at the start of the workday and from the last work location to the employee's home at the end of the workday.  Such travel is not considered to be part of the employee's principal activities and therefore, the time spent in such commuting is not required to be compensated under the Fair Labor Standards Act.  The limitation applies only if the use of the vehicle is within the normal commuting area for the employer's business or establishment and the use of the employer's vehicle is subject to an agreement between the employer and the employee or the employee's representative.  This clarification regarding an employee's "principal activity or activities" applies as well to activities performed by an employee which are incidental to the use of the employer-provided vehicle for travel by the employee at the beginning and end of the workday.

H.R. Rep. No. 104-585 at 4.

The two criteria set out in the ECFA:   (1) that the arrangement be part of an agreement, and (2) that travel be within the "normal commuting area" for the business, are both met in this case.

### a.  The Company Vehicles were Provided Pursuant to an Agreement between the Parties

With respect to the requirement that there be an agreement between the employer and employee regarding use of the Company vehicle, Congress clarified that this does not require a written agreement, and can simply be an understanding based on established industry or Company practices.  H.R. Rep. No. 104-585 at 4.  In this case, there is no factual dispute based on the deposition testimony that Plaintiffs' use of the Company vehicles was based on an agreement between Reddy and the Plaintiffs.  Plaintiffs asked for their own convenience to use

Company vehicles and the Company agreed to their request. See pp. 7-10, *infra*; Eldridge Aff. at ¶ 3.

This case is similar to *Chambers v. Sears Roebuck & Co.*, 428 Fed. Appx. 400 (5th Cir. 2011), in which two Sears in-home service technicians brought suit against Sears for overtime compensation under the FLSA and state law. Both plaintiffs were part of a voluntary program where they chose not to report to a centralized Sears location each day, but rather to report directly to the first customer in the morning and return home from the last customer at the end of the day. *Chambers*, 428 Fed. Appx. at 403. The "home technicians" participating in this home based work program were provided with Company-owned vans, which they kept at their homes while not in use. *Id*. Sears paid for all expenses related to the vehicles. *Id*. The Court rejected the employees' argument that commuting time was compensable in part because it determined that it was undisputed that the plaintiffs participated in the voluntary home program subject to an agreement. *Chambers,* 428 Fed. Appx. at 410.

Similarly, in this case, the undisputed facts demonstrate that the Plaintiffs and Defendants agreed to the commuting arrangement.

**b. The Travel to and from the Work Site was Within the Normal Commuting Area**

The second criteria under the ECFA – that the travel be within the company's "normal commuting area" – is also met in this case. Congress specifically declined to establish a mileage limit with regard to whether an employer's work site is within or outside the "normal commuting area" of the employer's establishment. Instead, the "normal commuting area" language was "intended to recognize the differences that exist between geographic regions, industries, etc. that cannot be easily defined." H.R. Rep. No. 104-585 at 5. In this case, the normal commuting area of Reddy was a two state area in which the Company performed services. Eldridge Aff. at ¶ 2.

Employees routinely travel many more than 50 miles each way to job sites. Mr. Eldridge's Affidavit lists the numerous construction sites as far away as Gallipolis, Allen County, Columbus, and Portsmouth. Eldridge Aff. at ¶ 2. By contrast, the Oxford and Arcanum sites are only fifty (50) miles from the Xenia office. *Id.* at ¶ 4.

The Court in *Chambers* also addressed the "normal commuting area." The court cited a 1999 DOL opinion letter to the effect that a home-based employee traveling in a Company van need not be compensated for travel from home to a work site unless the "time involved is extraordinary." *Chambers*, 428 Fed. App. at 411 (citing U.S. Dep't Lab. Op. Ltr. (Jan. 29, 1999)). The Court also noted that other courts have held that commutes "far longer" than the 35 minutes at issue in *Chambers* are "within the definition of ordinary home to work travel and are hence non-compensable under the Portal-to-Portal Act." *Id.* at 411 (citing *Smith v. Aztec Well Servicing Co.*, 462 F.3d 1274, 1288-90 (10th Cir. 2006) (commutes up to three and a half hours non-compensable)); *Vega v. Gasper*, 36 F.3d 417, 424 (5th Cir. 1994) (daily commutes of up to four hours non-compensable). In *Chambers*, the Court held that the plaintiffs failed to produce evidence that their commutes were greater than the 35 minutes allotted or that such a period is otherwise not "normal" for their "employer's business or establishment." *Id.* Similarly, in this case, given the geographic scope of Defendants' work area, the job sites at Arcanum and Oxford are well within the "normal commuting area." Thus, under the ECFA, the travel time to and from the construction work sites is not compensable.

## C. Loading Supplies is not Compensable Because it is Incidental to Commuting and the Time was *De Minimis*

While the travel time itself is not compensable, the occasional loading of small amounts of supplies is also noncompensable under the ECFA both because it is incidental to the commute and because the time is *de minimis*.

### a. The Loading of Supplies was Incidental to Use of the Company Vehicle

The ECFA specifically provides that activities which are "incidental" to the use of the Company vehicle are not compensable. 29 U.S.C. § 254(a). Regarding which activities are merely "incidental" to the employee's use of the Company's vehicle for commuting, Congress again specifically declined to elaborate, stating "[i]t is not possible to define in all circumstances what specific tasks and activities would be considered 'incidental' to the use of an employer's vehicle for commuting." H.R. Rep. No. 104-585 at 5. However, Congress made clear that "[m]erely transporting tools or supplies should not change the noncompensable nature of the travel." *Id.* Thus, the periodic loading and transporting of small amounts of supplies which Plaintiffs rely on here is precisely the type of incidental work which Congress declared to be noncompensable.

In the minority report, Congress Members opposed to H.R. 1227 expressly recognized that the Bill as proposed and as passed would render noncompensable certain employee activities that the minority thought would be compensable if they were performed after the work day began. As the Minority Report correctly recognized:

> H.R. 1227 enables employers to require employees to perform services for free that employers are otherwise required to pay for under current law. The employer can require the employee to **load the vehicle**, to fuel the vehicle, to maintain the vehicle, to take job assignments, or to perform any other duty "incidental" to the commute without paying the employee for those services.

H.R. Rep. No. 104-585 at 14 (emphasis added). Congress, after considering the language of the Minority Report, passed the Employee Commuter Flexibility Act in 1996 as proposed.

The Circuit Courts have quite properly relied heavily on the House Report for H.R. 1227, including the Minority Report, in making determinations that activities incidental to commuting in an employer vehicle are not compensable under the ECFA. See *Chambers v. Sears Roebuck and Co.*, 428 Fed. Appx. 400 (5th Cir. 2011) (affirming summary judgment in favor of employer,

17

quoting legislative history from House Report on ECFA amendments); *Rutti v. Lojack Corp., Inc.*, 596 F.3d 1046 (9th Cir. 2010); *Singh v. City of New York*, 524 F.3d 361 (2d Cir. 2008) (future Supreme Court Justice Sotomayor extensively analyzed the Portal to Portal Act and ECFA in ruling that carrying supplies needed once an employee arrived at the work site does not make commute time compensable).

For example, in *Chambers,* among other duties, home technicians were required to log into a computer system each morning to check assignments before leaving for the first work site of the day. The home technicians also received UPS packages containing "truck stock replenishment parts" at their homes sometimes daily or weekly, depending on usage. *Id*. Home technicians were instructed to put the boxes of parts, unopened, into the van at a time of their choosing. *Id*. The court ruled that this activity was incidental to use of the vehicle and was not compensable.

In *Chambers*, the plaintiffs, just as Mr. Syx and Mr. Lacy, claimed that since they were required to transport tools and parts in the Company van during the morning and evening commutes, the commute time was compensable. The Fifth Circuit was "entirely unpersuaded" by this argument, stating:

> Nothing in the statutory scheme requires, or even implies, that such conditions on an employee's use of a Company car, including the transportation of parts or tools, can transform an otherwise non-compensable commute in to a compensable one. In fact, the ECFA expressly provides that "activities performed by an employee which are incidental to the use of [the employer's] vehicle for commuting shall not be considered part of the employee's principal activities." 29 USC § 254(a). Again, Plaintiffs cite no authority for the proposition that conditions like those Sears placed upon Plaintiffs' use of the Company vans make commute time compensable under the ECFA. Moreover, reported decisions do not support Plaintiffs' contentions.

*Chambers*, 428 Fed. Appx. at 412.

The *Chambers* court repeated that the Portal-to-Portal Act amended the FLSA to relieve employers of liability for employees' activities that are "preliminary to or postliminary to" the employer's "principal activity or activities." *Id.* (citing 29 U.S.C. § 254(a)(2)).

Under the case law and the ECFA, occasional loading of supplies into a Company vehicle is incidental to the use of the Company vehicle and is not compensable.

### b. Plaintiffs' *De Minimis* Time Loading Trucks was Not Compensable

Even if the Court somehow concluded that Plaintiffs' activities of occasionally transporting material were not "incidental" to using the Company vehicle, the time would still be noncompensable because the time spent on the conduct was *de minimis*. *Id.* "[W]hen 'the matter in issue concerns only a few seconds or minutes of work beyond the scheduled working hours, such trifles may be disregarded.'" *Singh,* 524 F.3d. at 370 (quoting *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 692 (1946)). The *Chambers* court analyzed a list of activities that the plaintiffs claimed they performed before and after the work day, including loading boxes of parts into their work vans as needed, and unpacking and storing the parts, which, together with the other activities, plaintiffs testified took them anywhere from 10 to 30 minutes per day in the morning and another 10-30 minutes per day in the evening. The Court held that the activities, including the transportation of the tools and parts in the Company van, were incidental to the technicians' commute under the ECFA and, therefore, non-compensable. *Chambers*, 428 Fed. Appx. at 417.

But the Court further held that even if all of the activities were integral rather than incidental, they still would not be compensable because the time spent in doing them was *de minimis*. The Court stated:

> [B]ecause there is no evidence that transporting the parts and tools increased technician's commute times in the slightest, this activity is also de minimis. The daily SST activities and transportation of parts and tools are not compensable.

*Chambers*, 428 Fed. Appx. at 418.

The Court in *Singh* reached a similar conclusion, holding that the alleged extra commuting time from carrying supplies was *de minimis* because the extra time was practically difficult to record, the size of the claim in the aggregate was small and the claimants did not perform the work on a regular basis. *Singh*, 524 F.3d at 369-70.

In this case, Syx testified that he only loaded supplies once per week for five (5) to fifteen (15) minutes for several weeks, while Lacy claimed he spent five (5) to ten (10) minutes per day 90% of the time on this task during the June 2 through October 10th period he worked at Talawanda. Just as in *Chambers* and *Singh*, the activities that Plaintiffs claim they engaged in before and after commuting to and from the job sites occasionally loading and transporting small amounts of supplies were incidental to their commute and *de minimis*.[7]

### D. As an Alternate Theory, the Time at Issue is Not Compensable Because the Commute Time was Not Primarily to Benefit the Employer

In a different analytical approach which reached the same result, future Supreme Court Justice Sotomayor in *Singh* analyzed the plaintiff's demand to be compensated for commuting time under the "predominant benefit" test. The court reasoned that the key criteria in determining whether time spent by a worker is compensable is whether the time "is spent predominately for the employer's benefit or for the employee's."

> In the commuting context, we believe the appropriate application of the predominant benefit test is whether an employer's restrictions hinder the employee's ability to use their commuting time as they otherwise would have had then been no work related restrictions. Based on this test, we conclude

---

[7] Since it is undisputed that Lacy accrued an extra fifteen (15) minutes of unearned pay per day for the same period by virtue of only being docked thirty (30) minutes for his forty-five (45) minute lunch break, he has simply not been damaged even if his loading time was compensable.

that the mere carrying of inspection documents did not transform plaintiffs' otherwise noncompensable commute into compensable time.

*Singh,* 524 F. 3d at 369.

Applying Judge Sotomayer's logic to this case would result in a ruling for Defendants since the use of the Company vehicle was for the employees' benefit and the Company placed no restrictions on employees during the commute so long as they arrived to the work site on time. Lacy stopped to pick up coffee and snacks and Syx drank coffee, looked outside, and passed the time by "watching stuff going by" during the trip. Lacy Dep. at 30:2-12; Syx Dep. at 14:1-4.

### E. Plaintiffs Were Properly Compensated for All Time Worked Under Defendants' Lawful Rounding Practice

The new claim in the Second Amended Complaint that Defendants did not fairly "round" Plaintiffs' time is contradicted by the time records themselves.

The DOL regulations expressly approve of employer rounding practices. 29 C.F.R. § 785.48 provides:

(a)    Differences between clock records and actual hours worked. Time clocks are not required. In those cases where time clocks are used, employees who voluntarily come in before their regular starting time or remain after their closing time, do not have to be paid for such periods provided, of course, that they do not engage in any work. Their early or late clock punching may be disregarded. Minor differences between the records and the actual hours worked cannot ordinarily be avoided, but major discrepancies should be discouraged since they raise a doubt as to the accuracy of the records of the hours actually worked.

(b)    "Rounding" practices. It has been found that in some industries, particularly where time clocks are used, there has been the practice for many years of recording the employees' starting time and stopping time to the nearest 5 minutes, or to the nearest one-tenth or quarter of an hour. Presumably, this arrangement averages out so that the employees are fully compensated for all the time they actually work. For enforcement purposes, this practice of computing working time will be accepted, provided that it is used in such a manner that it will not result, over a period of time, in failure to compensate the employees properly for all the time they have actually worked.

"While few Courts have interpreted this regulation [29 C.F.R. § 785.48(b)], those that have recognize that the regulation permits employers to use a rounding policy for recording and compensating employee time as long as the employer's rounding policy does not 'consistently result[] in a failure to pay employees for time worked.'" *Eddings v. Health Net, Inc.*, No. CV10-1744-JST, 2011 U.S. Dist. LEXIS 115989, at * 10-11 (C.D. Cal. Mar. 23, 2012) (quoting *Sloan v. Renzenberger, Inc.*, No. 10-2508-CM-JPO, 2011 U.S. Dist. LEXIS 41018, at *8 (D. Kan. Apr. 15, 2011)). "[A]n employer's rounding policy practices comply with § 785.48(b) if the employer applies a consistent rounding policy that, on average, favors neither overpayment nor underpayment." *Id.* at *11 (citing *East v. Bullock's, Inc.*, 34 F. Supp. 2d 1176, 1184 (D. Ariz. 1998) (granting summary judgment in employer's favor where "evidence show[ed] that [employer's] rounding system may not credit employees for all the time actually worked, but it also credits employees for time not actually worked" so that the employer's "rounding practices average[d] out sufficiently to comply with § 785.48(b)")). *See, also, Adair v. Wis. Bell, Inc.*, No. 08-C-280, 2008 U.S. Dist. LEXIS 68942, at *30 (E.D. Wis. Sept. 11, 2008) (approving policy where there was no evidence to suggest it systematically favored employer); *Contini v. United Trophy Mfg.*, No. 6:06-cv-432-Orl-18UAM, 2007 U.S. Dist. LEXIS 42510, at *10 (M.D. Fla. June 12, 2007) (granting employer's motion for summary judgment where the "[employer], throughout [the employee's] employment, [used] a consistent policy as to the rounding of clocking-in and clocking out, which [was] both fair and evenly applied to all employees.").

In this case, Defendant did round time in 15 minute increments when a Plaintiff logged in after the normal starting time at the construction site. At the construction sites, employees logged in using the supervisor's cell phone under his supervision. Yankee Aff. at ¶ 4; Lacy Dep. at 19-24; Syx Dep. at 9-18. Employees who logged in early did not begin to work until the

standard starting time. As the Affidavit of Cheryl Yankee, Reddy's Services Safety Coordinator, demonstrates, the automated rounding process did not systematically deprive either Plaintiff of pay earned. In fact, when factoring in the undisputed fact that each Plaintiff was given 45 minutes off for lunch at the construction sites but only docked 30 minutes pay, Mr. Lacy was overpaid 24.37 hours, and Mr. Syx was overpaid 63.28 hours during the time they worked at the construction sites. Yankee Aff. at ¶ 8.

During the period when Lacy worked at the shop in Xenia, the log in procedures were different in that employees logged themselves in at their convenience. Yankee Aff. at ¶ 9. Regardless of when employees logged themselves in, they did not begin to work until the standard 7:30 a.m. start time. Employees worked and were paid for an eight-hour day. Lacy was fully paid for the time he actually worked at the shop. *Id.*

Furthermore, any time that was rounded away under Reddy's rounding practice was *de minimis*, and, therefore, not compensable. In general, employees cannot recover for otherwise compensable time if it is *de minimis*. *Lindow v. United States*, 738 F.2d 1057, 1062 (9th Cir. 1984). According to the Supreme Court,

> Split-second absurdities are not justified by the actualities of working conditions or by the policy of the Fair Labor Standards Act. It is only when an employee is required to give up a substantial measure of his time and effort that compensable working time is involved.

*Id.* (citing *Anderson*, *supra*, at 692).

## F. Since Plaintiffs Were Paid All Wages Owing, the R.C. 4113.15 Claim in Count Five Necessarily Fails

Ohio Rev. Code § 4113.15 requires that an employer "on or before the first day of each month, pay all its employees the wages earned by them during the first half of the preceding month ending with the fifteenth day thereof, and shall, on or before the fifteenth day of each month, pay such employees the wages earned by them during the last half of the preceding

calendar month." Inasmuch as Defendants have demonstrated herein that they are entitled to summary judgment on all claims for compensation by Plaintiffs, the Plaintiffs' R.C. § 4113.15 must necessarily fail as a matter of law, as Plaintiffs have received all wages owing to them.

**CONCLUSION.**

For the foregoing reasons, there are no genuine issues of material fact that remain to be litigated, and Defendants, are entitled to judgment as a matter of law on all claims asserted by Plaintiffs.

Respectfully submitted,

___s/ C. Mark Kingseed_____
C. Mark Kingseed (0024597)
COOLIDGE WALL CO., L.P.A.
33 W. First Street, Suite 600
Dayton, OH 45402
Phone: 937-223-8177
Fax: 937-223-6705
E-mail: kingseed@coollaw.com

TRIAL ATTORNEY FOR DEFENDANTS
REDDY ELECTRIC CO. AND
JEFFREY ELDRIDGE

Of Counsel:

Allison D. Michael (0071055)
33 W. First Street – Suite 600
Dayton, OH 45402
Phone: 937-223-8177
Fax: 937-223-6705
E-mail: michael@coollaw.com

<u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on this 14th day of September, 2012, the foregoing *Defendants' Motion for Summary Judgment* was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's CM/ECF and copies will be mailed via U.S. Mail to those parties to whom electronic notice has not been sent. Parties may access the filing through the Court's system.

<u>s/C. Mark Kingseed</u>
Attorney at Law

w:\wdox\client\641790\00583\00596016.doc