IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

| | | |
|---|---|---|
| **CODY LACY, et al.** | : | Case No. 3:11-cv-0052 |
| | : | |
| **Plaintiffs,** | : | (Judge Walter Herbert Rice) |
| | : | |
| **v.** | : | |
| | : | |
| **REDDY ELECTRIC CO., et al.,** | : | |
| | : | |
| **Defendants.** | : | |

---

**DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFFS' PARTIAL MOTION
FOR SUMMARY JUDGMENT**

---

C. Mark Kingseed (0024597)
COOLIDGE WALL CO., L.P.A.
33 W. First Street, Suite 600
Dayton, OH 45402
Phone: 937-223-8177
Fax: 937-223-6705
E-mail: kingseed@coollaw.com

TRIAL ATTORNEY FOR DEFENDANTS
REDDY ELECTRIC CO. AND
JEFFREY ELDRIDGE

Of Counsel:
Allison D. Michael (0071055)
33 W. First Street – Suite 600
Dayton, OH 45402
Phone: 937-223-8177
Fax: 937-223-6705
E-mail: michael@coollaw.com

<u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES .................................................................................. iii

I.     UNDISPUTED FACTS .......................................................................... 3

    A.    The Nature of Reddy Electric's Business ................................. 3

Reddy is an electrical contractor which works at construction sites throughout Ohio and Kentucky. The principal places of work for company employees are the actual construction sites.

    B.    Reddy's Travel Policies Require Employees to Provide their Own Transportation to the Job Site ........................................... 4

The company did not provide transportation to the principal place of work at various construction sites. All employees were required to provide their own transportation at their own expense to construction sites. Employees' work day begins when they arrive at the construction site, log in and begin to perform work duties.

    C.    Plaintiffs, for their Own Convenience, Ask Reddy to Use Company Transportation to the Work Sites ........................................ 4

Plaintiffs admitted they wanted to save gasoline expenses and wear on their private vehicles so they asked if they could use company vehicles to get to the work sites. Defendants accommodated plaintiffs' request but at all times the plaintiffs were free to travel directly to the principal place of business without using company-provided vehicles.

        1.    Lacy............................................................................. 4

        2.    Syx ............................................................................. 6

    D.    As An Incident to the Commute, Plaintiffs Periodically Loaded Small Amounts of Material into the Company Vehicle at Xenia Before Traveling To the Work Site ........................................ 7

Sometimes (not every day and never for more than 5-15 minutes) plaintiffs allegedly loaded or unloaded small amounts of material in the company vehicle before or after the commute to the principal place of business.

    E.    Log in Procedures at the Company.................................... 8

Plaintiffs used an electronic log in system at the principal place of business on the construction sites.

    F.    Employees are paid an Extra 15 Minutes Pay Each Day at the Construction Sites .......................................................... 9

i

It is undisputed that the plaintiffs received an extra 15 minutes of pay per day during their 45 minute lunch break at the construction site. This compensated time must be set off against any claim of uncompensated preliminary or postliminary work which was actually performed.

II.   ARGUMENT ..................................................................................................... 9

     A.    Standard of Review.................................................................................. 9

     B.    Travel Time to and from the Work Site is Not Compensable Under
           the ECFA. ............................................................................................. 10

Congress specifically addressed the non-compensability of commuting time and any activity "incidental" to the commute in the Employee Commuting Flexibility Act ("ECFA") of 1996. Pursuant to that Act, commuting time in company vehicles is not compensable if the commute is pursuant to an agreement between the parties and the commute is within the "normal computing range." Both criteria are met in this case.

          1.    The Company Vehicles were Provided Pursuant to an
                Agreement between the Parties.............................................. 14

          2.    The Travel to and from the Work Site was Within the Normal
                Commuting Area..................................................................... 15

          3.    Simply Carrying Passengers in the Company Vehicle Does
                Not Entitle Plaintiffs to Compensation. ................................. 16

Non-compensable voluntary commuting time does not become compensable just because other employees ride along with the driver in the company vehicle.

     C.    As an Alternate Theory, the Time at Issue is Not Compensable
           Because the Commute Time was Not Primarily to Benefit the
           Employer................................................................................................ 20

In this case, the commute was for the benefit of the employees, and any action the employees took was merely incidental to the commute.

     D.    Loading Supplies is Not Compensable Because it is Incidental to
           Commuting and the Time was De Minimis................................................ 20

          1.    The Loading of Supplies was Incidental to Use of the
                Company Vehicle.................................................................... 21

Given the facts of this case, the alleged periodic loading and unloading of supplies in the company vehicle was merely incidental to the commute under the ECFA and is not compensable under the law.

          2.    Plaintiffs' De Minimis Time Loading or Unloading Trucks
                was Not Compensable.............................................................. 24

Under established law, the scattered minutes plaintiffs allegedly spent loading or unloading material on some days was de minimis and is not compensable.

E.    The Continuous Workday Rule is Not Applicable ............................................. 26

The continuous work day principle does not apply because the commute and the incidental work were non-compensable under the ECFA and because the time spent was de minimis.

1.    Plaintiff's Cases are Distinguishable ........................................................ 27

All of these cases cited by plaintiffs are distinguishable. The cases either predate the ECFA or are factually distinguishable from the case at bar in which the commuting was purely for the benefit of the plaintiffs and any work performed was incidental to and directly related to the commute.

F.    Plaintiffs Were Properly Compensated for All Time Worked Under
      Defendants' Lawful Rounding Practice ............................................................. 30

The defendant's policy of rounding up or down time is fully consistent with the law. Plaintiff's arguments are based entirely on an obvious misunderstanding of how the rounding process worked.

G.    Plaintiffs' Claim for Violation of the Ohio Constitution is Inaccurate
      Because Counsel Jointly Agreed to Postpone Production Pending
      Settlement Discussions and the Discovery Process ............................................. 33

The affidavit of defendant's former counsel demonstrates that attorneys for the parties mutually agreed to postpone production of any documentation pending efforts to resolve the case.

H.    There is No Factual Basis For Granting Summary Judgment On The
      Issue of Defendants' Good Faith ...................................................................... 34

Given the clear applicability of the ECFA, there is no basis for implying or finding bad faith on the part of the defendants.

I.    The New Claim of Off-the-Clock Work at the Construction Site ....................... 35

Plaintiffs cannot properly create a question of fact regarding off the clock work when they initially testified in their depositions that they did not perform such work. Even if the work was performed, it is de minimis and non-compensable.

III.    CONCLUSION ................................................................................................... 36

The plaintiff's motion for partial summary judgment should be denied.

CERTIFICATE OF SERVICE ............................................................................................... 37

<u>TABLE OF AUTHORITIES</u>

**Cases**

*Adair v. Wis. Bell, Inc.*, No. 08-C-280, 2008 U.S. Dist. LEXIS 68942 (E.D. Wis. Sept. 11, 2008) ................................................................................................ 31

*Agner v. U.S.,* 8 Cl. Ct. 635 (Cl. Ct. 1985) .............................................................. 9

*Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680 (1946) ............................ 24, 33

*Avery v. City of Talladega*, 24 F.3d, 1337 (11th Cir. 1994) ................................... 9

*Baker v. GTE*, 110 F.3d 28 (7th Cir 1997)............................................................. 13

*Barefield v. Village of Winnetka*, 81 F.3d 704 (7th Cir. 1996) ............................... 9

*Bolick v. Brevard County Sheriff's Dept.*, 937 F. Supp. 1560 (M.D. Fla. 1996) ............ 9

*Breen v. Concrete By Wagner, Inc.*, No. 98 C 3611, 1999 U.S. Dist. LEXIS 17401 (N.D. Ill. Nov. 4, 1999)............................................................................. 30

*Brooks v. Longcore*, No. 1:11-cv-1060, 2012 U.S. Dist. LEXIS 141625 (W.D. Mich. June 15, 2012).......................................................................................... 34

*Buzek v. Pepsi Bottling Group, Inc.*, 501 F. Supp. 2d 876 (S.D. Tex. 2007) ............... 29

*Carter v. Panama Canal Co.*, 314 F. Supp. 386 (D. D.C. 1970 (2 to 15 minutes), *aff'd*, 150 U.S. App. D.C. 198, 463 F.2d 1289 (D.C. Cir.), *cert. denied*, 409 U.S. 1012, 34 L. Ed. 2d 306, 93 S. Ct. 41 (1972) .................................................... 25

*Chambers v. Sears Roebuck & Co.*, 428 Fed. Appx. 400 (5th Cir. 2011).............14, 15, 16, 22, 23, 24, 26, 29

*Cloutier v. City of Phenix City,* 834 F. Supp. 366 (M.D. Ala. 1993).......................... 9

*Contini v. United Trophy Mfg.*, No. 6:06-cv-432-Orl-18UAM, 2007 U.S. Dist. LEXIS 42510, (M.D. Fla. June 12, 2007).................................................... 31

*Creech v. Ohio Cas. Ins. Co.*, 944 F. Supp. 1347 (1996) ...................................... 10

*Dillworth v. Case Farms Processing, Inc.*, No. 5:08CV1694, 2009 U.S. Dist. LEXIS 76947 (N.D. Ohio Aug. 27, 2009) ................................................................. 10

*Dooley v. Liberty Mut. Ins. Co.*, 307 F. Supp. 2d 234, 247 (D. Mass. 2004) ............... 28

*Dunlop v. City Elec., Inc.*, 527 F.2d 394, 400 (5th Cir. 1976)......................... 12, 28, 29

*E.I. du Pont de Nemours & Co. v. Harrup*, 227 F.2d 133, 135-36 (4th Cir. 1955)...................... 25

*East v. Bullock's, Inc.*, 34 F. Supp. 2d 1176 (D. Ariz. 1998) ................................. 31

*Eddings v. Health Net, Inc.*, No. CV10-1744-JST, 2011 U.S. Dist. LEXIS 115989 (C.D. Cal. Mar. 23, 2012) ................................................................... 31

*Green v. Planters Nut & Chocolate Co.*, 177 F.2d 187, 188 (4th Cir. 1949) ................ 24-25

*Helmut v. Butterball*, 805 F. Supp. 2d 655 (D. Ark. 2011)..................................... 28

*Herman v. Rich Kramer Constr., Inc.,* No. 97-4308WMF, 1998 U.S. App. LEXIS 23329 (8th Cir. Sept. 21, 1998) ................................................................. 18, 19, 28

*Hodge v. Lear Siegler Servs., Inc.,* No. CV06–263–MHW, 2008 U.S. Dist. LEXIS 45128 (D. Idaho June 9, 2008) ........................................................................ 19

*Hodgson v. Katz & Besthoff, #38, Inc.*, 365 F. Supp. 1193 (W.D. La. 1973) ........................ 25, 29

*IBP v. Alvarez*, 546 U.S. 21, 40 (2005) ........................................................................ 27

*Lindow v. United States*, 738 F.2d 1057 (9th Cir. 1984) ........................................ 25, 33

*Lyons v. Core Sys., L.L.C.*, No. 2:10-CV-75, 2011 U.S. Dist. LEXIS 106368 (S.D. Ohio Sept. 21, 2011) ....................................................................................... 34

*O'Brien v. Encotech Constr.*, No. 00-CV-1133, 2004 U.S. Dist. LEXIS 4696 (N.D. Ill. Mar. 23, 2004) ....................................................................................... 29

*Ross v. Wolf Fire Prot., Inc.,* 799 F. Supp. 2d 518 (D. Md. 2011) ................................ 27

*Rutti v. Lojack Corp., Inc.*, 596 F.3d 1046 (9th Cir. 2010) ........................................ 22

*Shah v. Getz*, No. 93WD117, 1994 Ohio App. LEXIS 2780 (6th Dist. June 30, 1994) ............... 34

*Singh v. City of New York*, 524 F.3d 361 (2d Cir. 2008) .................................... 20, 22, 24, 26, 27

*Sloan v. Renzenberger, Inc.*, No. 10-2508-CM-JPO, 2011 U.S. Dist. LEXIS 41018 (D. Kan. Apr. 15, 2011) ....................................................................................... 31

*Smith v. Aztec Well Servicing Co.*, 462 F.3d 1274 (10th Cir. 2006) ........................... 15-16, 18, 19

*Thomas v. Speedway SuperAmerica, LLC*, 506 F.3d 496 (6th Cir. 2007)) .......................... 10

*Vega v. Gasper*, 36 F.3d 417 (5th Cir. 1994) ................................................................ 16

*Whitt v. Lockheed Martin Util. Servs., Inc.*, 209 F. Supp. 2d 787 (S.D. Ohio 2002) ................... 10

*Wirtz v. Marino*, 405 F.2d 938 (1st Cir. 1968) ........................................................... 18

*Wuliger v. Eberle*, 414 F. Supp. 2d 814, 818 (N.D. Ohio 2006) .................................. 34

**Statutes**

29 C.F.R. § 785.18 ........................................................................................... 9

29 C.F.R. § 785.19 ........................................................................................... 9

29 C.F.R. § 785.35 ........................................................................................... 11

29 C.F.R. § 785.48 ........................................................................................... 30

29 C.F.R. § 790.6(b) ......................................................................................... 26

29 U.S.C. § 201 ............................................................................................... 10

29 U.S.C. § 251, *et seq.* ..................................................................................... 1, 12

29 U.S.C. § 254(a) ........................................................................................ 11, 13, 21

Art. 2, § 34a of the Ohio Constitution ................................................................ 33

Fed. R. Civ. P. 56(c) ......................................................................................... 10

Ohio Rev. Code § 4114.14(G)(1) ......................................................................... 33

Ohio Revised Code Chapter 4111 ................................................................... 10, 33

**Other Authorities**

H.R. Rep. No. 104-585 ........................................................................ 1, 12, 13, 14, 15, 17, 21, 27

# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION AT DAYTON

| | | |
|---|---|---|
| **CODY LACY, et al.** | : | Case No. 3:11-cv-0052 |
| | : | |
| **Plaintiffs,** | : | (Judge Walter Herbert Rice) |
| | : | |
| **v.** | : | |
| | : | **DEFENDANTS' RESPONSE IN** |
| **REDDY ELECTRIC CO., et al.,** | : | **OPPOSITION TO PLAINTIFFS'** |
| | : | **PARTIAL MOTION FOR SUMMARY** |
| **Defendants.** | : | **JUDGMENT** |

Plaintiffs' Memorandum in support of their Motion for Partial Summary Judgment ("Plaintiff's Memorandum") for the most part accurately describes **general** black letter wage and hour law.  But Plaintiffs ignore the **specific** provisions of the Employee Commuting Flexibility Act ("ECFA") of 1996, which address the precise issues in this case, *i.e.*, the non-compensability of time traveling to and from the principal place of employment in company-provided vehicles at the beginning and end of the working day.  29 U.S.C. § 251, *et seq*.  The ECFA also provides that actions "incidental" to the commute in company vehicles are not compensable.   The legislative history of the ECFA explicitly states:

> The employer can require the employee to **load the vehicle**, to fuel the vehicle, to maintain the vehicle, to take job assignments, or to perform any other duty "incidental" to the commute without paying the employee for those services.

H.R. Rep. No. 104-585 at 14 (emphasis added).

Thus, the conflicting motions for summary judgment[1] in this case require the Court to determine the applicability of the ECFA where it is undisputed that:

---

[1] The Memorandum in Support of Defendants' Motion for Summary Judgment (Doc. No. 71) is incorporated by reference in this Memorandum.

\*   Company policy mandated that all employees were required to provide their own transportation to the employees' principal place of work at construction work sites.

\*   The two Plaintiffs, solely for their own convenience and to save gasoline expenses, asked the Defendants to allow them to use Company vehicles to travel from Company headquarters to and from the principal place of work.

\*   The employer acquiesced in the request as an accommodation to the Plaintiffs.

\*   Each Plaintiff understood that they were never required to use the Company vehicles, but were free to drive their own vehicles (or use any other method necessary) to get to the construction sites.

\*   Each Plaintiff sometimes performed minor and *de minimis* incidental work related to the commute by loading or unloading small amounts of material into the vehicle before and after traveling to the construction sites.

\*   The length and duration of the commute was totally up to the employees; they were free to stop for coffee or snacks, to sleep when not driving – their only duty was to be at the construction work site on time.

\*   Other employees from time to time voluntarily rode along when Plaintiffs either drove or rode in the Company provided vehicles.

Under the ECFA, as well as common sense and fundamental equity, Reddy's generosity in providing a Company vehicle for the commute should not give Plaintiffs a three-hour per day windfall.

The other issues raised by Plaintiffs' Memorandum are easily dealt with. As to the claim that Defendants did not properly account for time worked, Plaintiffs simply do not understand how the rounding process worked — the Affidavit of the official most knowledgeable disposes of the issue. See Ex. D to Defs.' Mot. Summ. J. (Doc. 71) (Affidavit of Cheryl Yankee – "Yankee Aff."). Similarly, the claim that Defendants did not produce Plaintiff Lacy's payroll records in a timely manner ignores the fact that counsel for the parties mutually agreed to postpone production. See Ex. B to Defs.' Mot. Summ. J. (Doc. 71) (Affidavit of former counsel for Defendants, Laura Wilson – "Wilson Aff.") and discussion infra at 33-34. Lastly, the new

manufactured claim that Plaintiffs worked off the clock at the construction sites not only contradicts their earlier deposition testimony and is *de minimis* as a matter of law, but is also contradicted by the affidavit testimony of the relevant foremen. See Affidavits of Tom Wicker ("Wicker Aff.") and Ron Baker ("Baker Aff."), attached as Exhibits A and B, respectively, to this Memorandum.

Plaintiffs' Motion should be denied in its entirety and the Defendants' Motion for Summary Judgment should be granted.

## I.  UNDISPUTED FACTS

### A.  The Nature of Reddy Electric's Business

Defendant Reddy Electric Company ("Reddy" or "the Company") is a full service electrical contractor. See, Ex. 1 to Deposition of Plaintiff Cody Lacy ("Lacy Dep.") (Docs. 27 & 67).[2] Defendant Jeffrey Eldridge is Reddy's Vice President. Amended Compl. at ¶ 9. Reddy's main office and headquarters is in Xenia, Ohio. Id. at ¶ 7. Construction workers such as Plaintiffs typically are assigned to work at various work sites, performing electrical work as part of construction or renovation projects. Lacy Dep. Ex. 1 at p. 8. Their duties, *i.e.*, the reason they were hired, was to work at the construction sites which were the principal places of employment. See Ex. C to Defs.' Mot. Summ J. (Doc. 71) (Affidavit of Jeffrey Eldridge -- "Eldridge Aff.") at ¶ 3. Neither Plaintiff was ever required to drive, transport material or personnel to the construction work sites. *Id.* Defendants did not need either Plaintiff to perform those functions and, if Plaintiffs did so, it was purely incidental to the voluntary commute to the principal places of employment. *Id.*

---

[2] All depositions cited have been filed with the Court. Plaintiffs Lacy and Syx were both deposed on September 14, 2011 (Docs. 27 & 28, respectively) and the depositions continued on August 22, 2012 (Docs. 67 & 68, respectively).

The Company's normal business area includes the entire states of Ohio and Kentucky. Eldridge Aff. at ¶ 1. The numerous work locations outside the Xenia area in 2009-11 are listed in the Eldridge Affidavit.

### B. Reddy's Travel Policies Require Employees to Provide their Own Transportation to the Job Site

Reddy provides a written Company Handbook ("Handbook") which contains Company policies. The Handbook (which was Exhibit 1 in the Lacy and Syx depositions) describes the Company policy regarding transportation as follows:

Travel

1.  An employee is expected to provide his/her own dependable transportation at his/her own expense to and from the job assignment.

Both Plaintiffs signed an acknowledgment that they received the Handbook, and both were familiar with the transportation requirement. Lacy Dep. at 34:5-17; 38:21—39:4; Deposition of Plaintiff Kyle Syx ("Syx Dep.") (Docs. 28 and 68) at 35:1-9; 40:7-14.

### C. Plaintiffs, for their Own Convenience, Ask Reddy to Use Company Transportation to the Work Sites

#### 1. Lacy

Lacy began full-time employment with Defendant Reddy Electric after his high school graduation in May, 2010. Lacy Dep. at 9:10-13. For a period of time, Lacy worked in the shop area of the Company Headquarters in Xenia. *Id.* at 9:14—10:6. Thereafter, he was assigned to the project at Talawanda High School in Oxford, Ohio. *Id.* at 21:20-25; 10:6-7. During the period he worked at the shop, and for the first 6 weeks of employment at Talawanda, Lacy drove his own vehicle to his assigned work site at Talawanda High School as per Company policy. *Id.* at 10:18-23.

4

Thereafter, while he was aware that the Company required employees to provide their own transportation to the work site, Lacy asked the Company to make an exception for him:

> Q.     Why did you stop driving your own vehicle to Talawanda?
>
> A.     Because -- half my pay check was going to gas.  I couldn't afford it.
>
> Q.     Was this during the $4 a gallon business?
>
> A.     Yes, I couldn't afford it.  I had my insurance I had to pay, my truck payment still and so on and so forth.
>
> Q.     Was the decision to stop driving your own vehicle a decision that you made?
>
> A.     Yes.  I called Jeff [Eldridge]  and I said is there any way -- when is there something going down there  . . . .

Lacy Dep. at 11:2-14.

Lacy admitted that he always had the option of driving his own vehicle to the work site.

> Q.     During this entire period again for when you were working full time, you had the option to drive your own vehicle to the job site, didn't you?
>
> A.     Right.
>
> Q.     And every single day you could have done that, correct?
>
> A.     Yes.

*Id.* at 21:1-7.

Lacy claimed he physically drove the Company vehicle, a small two person truck with one other employee, Jaycob Burns, to and from the work site.  Lacy Dep. at 16:11-24.  Lacy admitted that during the drive/ride time "we stopped at Speedway to get coffee, snacks, fill up or do whatever we needed to do before we got down there."  *Id.* at 30:2-12; Ex. A to Defs.' Mot. Summ. J. (Doc. 71) (Affidavit of Jaycob Burns -- "Burns Aff.") at ¶ 6.

### 2.     Syx

Lacy's friend Kyle Syx began working for Reddy Electric after his high school graduation in early June 2010.  Syx Dep. at 6:21-25.  Mr. Syx worked at the Arcanum Butler work site from June 2010 to December 2010 and at the Talawanda work site from January 2011 to June 2011.  Syx Dep. at 7:22—8:2.  Like Lacy, Syx drove to the work site for a period, but then he also asked the Company to make an exception and allow him to drive or to ride in a Company vehicle.

> Q.    Why did you decide to stop using your personal vehicle to go to the job site?
>
> A.    To save on gas and wear and tear on my vehicle.
>
> Q.    It was your choice wasn't it to take the Company van as opposed to driving your own vehicle, is that correct?
>
> A.    It was a choice, yes.
>
> Q.    You could have continued to drive your personal vehicle to Arcanum-Butler every day?
>
> A.    Yes.
>
> Q.    Did anyone at the Company tell you that you had to come to Xenia and take the Company van?
>
> A.    No.

Syx Dep. at 8:20—9:8.

> Q.    During this entire period, sir, when you were working at Arcanum-Butler and Talawanda, it was your choice to go to Xenia first, correct?
>
> A.    Yes.  It was a choice, yes.
>
> Q.    You could have simply driven your own vehicle to the work site, right?
>
> A.    Yes, if I wanted to risk the wear and tear on my old vehicle and spend the money on gas.  Since I have an old vehicle and it's a truck, I would spend roughly twenty dollars a day.

Q.    You made the choice to come to the Xenia office to be transported in a Company vehicle in order to save wear and tear on your personal car; is that right?

A.    Yeah.

Syx Dep. at 20:22—21:11.

Syx said he actually drove an average of once per week and was a passenger in an eleven person van the other four days of the week. Syx Dep. at 13:20-25. After several weeks in the van, Syx rode or drove in a smaller vehicle. *Id.* at 18:13-15. Syx admitted he did not do any work in the vehicle during the three-hour round trip and that when he was not driving he would "[b]asically sit there and drink coffee or look outside, pass the time by watching stuff go by." *Id.* at 14:1-5.

### D.    As An Incident to the Commute, Plaintiffs Periodically Loaded Small Amounts of Material into the Company Vehicle at Xenia Before Traveling to the Work Site

Both Plaintiffs testified that on some occasions they would put material in the Company vehicle at Xenia before traveling to the work site in the morning. Lacy contended he did this 90% of the time (4 days per week) and that it typically took between 5 to 10 minutes. Lacy Dep. at 12:13-19.

Syx testified he loaded material "maybe once per week" when he first began to ride in the Company van and that when he did so it would take from 5 to 15 minutes. Syx Dep. at 9:24—10:2. However, after a few weeks, Syx began driving or riding in a smaller vehicle to get to the work site and no longer loaded any supplies into the vehicle although he may have carried hand tools from time to time. *Id.* at 18:13-15, 19:19—20:4, 20:18-21. Thus, based on his deposition testimony, Syx only loaded material once per week for five (5) to fifteen (15) minutes for several weeks during the one (1) year he worked at Reddy.

7

Both Plaintiffs further testified that occasionally they would transport junk material from the work site to Xenia in the Company vehicle and throw it out in the Xenia dumpster after the end of the work day.  This unloading process would take approximately 10 minutes.  Lacy Dep. at 28:16-20; Syx Dep. at 17:1-3.  Lacy claimed he performed the unloading 80-85% of the time (4 days per week) (Lacy Dep. at 18:5-8), Syx claimed it was once every two weeks or so for ten minutes at the longest.  (Syx Dep. at 15:9-14, 16:24—17:3).

### E.    Log in Procedures at the Company

At Talawanda and Arcanum Butler, the Company used an electronic log in system. Individuals would arrive at the work site, check in with the foreman and use the foreman's cell phone, under his supervision, to plug in their personal identification number, their work code and the system would then automatically track the log in time.  At the end of the work day, the individuals would log out of the system using the same method.  Yankee Aff. at ¶ 4.

The Company rounds up or down to the quarter hour based on fifteen (15) minute increments after the established start time at the construction site.  For example, under the electronic system, if an individual logged in before the 7:00 a.m. starting time, the time would be rounded up to 7:00 a.m. when they actually began work.  Conversely, if the employee logged in after the start time, he would be rounded to the nearest quarter hour increment.  Yankee Aff. at ¶ 5.  The system was designed and was implemented to be time neutral, *i.e.,* it would not result in a systematic way in either a decrease or an increase in paid time.

The log in process was slightly different for the shop where Mr. Lacy worked from September 2009 to April 2010.  At the shop, the cell phone log in was accessible to employees in the warehouse area and employees logged in and logged out at their convenience.  However, employees worked an actual shift from 7:30 a.m. to 4:30 p.m. with a one hour lunch break.

Employees were paid for the actual time working.  Unless the supervisor assigned extra duties, the employees did not work more than forty (40) hours per week at the shop.  Yankee Aff. at ¶ 9.

### F.  Employees are Paid an Extra 15 Minutes Pay Each Day at the Construction Sites

At both the Arcanum Butler and the Talawanda work sites, employees, including Mr. Lacy and Mr. Syx, were given forty-five (45) uninterrupted minutes off for lunch.  During that period, they were totally relieved of duties and were not expected or permitted to perform any work for the Company.  Even though each employee, including Mr. Lacy and Mr. Syx, was given forty-five (45) minutes off, their pay was only docked for thirty (30) minutes per day. Yankee Aff. at ¶ 2.  Lacy Dep. at 59:20—60:7; Syx Dep. at 58:15-17; 60:21-24; 74:16-20. Therefore, for each day that Mr. Lacy and Mr. Syx worked at the Arcanum Butler and Talawanda work sites, they were paid for an additional fifteen (15) minutes of time each day during which they did not perform any services or work for the Company.[3]

## II.  ARGUMENT

### A.  Standard of Review

Summary judgment should be granted where the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits, show that there are no genuine issues of

---

[3]  The Company in the past had provided a 30-minute unpaid lunch and a 15-minute paid break.  Under the FLSA, a standalone 15-minute break must be paid time because the employees do not have sufficient time to be totally relieved of work duties. 29 C.F.R. § 785.18.  When the Company combined the lunch and break, the entire 45 minutes could have been unpaid under the law.  See 29 C.F.R. § 785.19; Yankee Aff. at 2.  Thus, the extra 15 minutes' daily pay provided must be counted when determining whether Plaintiffs have been fully paid for time worked.  Courts have repeatedly concluded in FLSA cases that time compensated but not worked offsets time worked but not compensated.  In *Barefield v. Village of Winnetka*, 81 F.3d 704, 710 (7th Cir. 1996), police officers and civilian dispatchers were required to attend a 15-minute roll call meeting before the start of each day, for which they were not compensated.  However, their employer compensated them for a 30-minute lunch period each day during which they performed no work.  *Id.*  Plaintiffs claimed that the 15-minute roll call meetings were compensable.  *Id.* The court agreed, but held that because "the meal periods are not compensable under the FLSA," the employer "may properly offset the meal break against the compensable roll call time worked by Plaintiffs."  *Id.; see, also, Avery v. City of Talladega*, 24 F.3d 1337, 1347 (11th Cir. 1994) (employer was allowed "to offset the meal break against the compensable pre- and post- shift time worked by the plaintiffs"); *Bolick v. Brevard County Sheriff's Dept.*, 937 F. Supp. 1560, 1572 (M.D. Fla. 1996) (defendant "may properly offset meal breaks against any compensable pre- and post- shift time worked by the plaintiffs"); *Cloutier v. City of Phenix City*, 834 F. Supp. 366, 372 (M.D. Ala. 1993) (non-compensable lunches could offset preshift compensable time; *Agner v. U.S.*, 8 Cl. Ct. 635, 638 (Cl. Ct. 1985) (duty free lunch period can be offset against compensable pre-shift and post-shift activities).

material fact that remain to be litigated and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Whitt v. Lockheed Martin Util. Servs., Inc.*, 209 F. Supp. 2d 787, 790 (S.D. Ohio 2002).

The moving party bears the initial burden of showing the absence of genuine issues of material fact. *Whitt*, 209 F. Supp. 2d at 791. The evidence must be viewed in the light most favorable to the non-moving party. *Id.* Where the moving party meets its burden, summary judgment "is appropriate if the opposing party fails to make a showing sufficient to establish the existence of an element essential to the party's case and on which that party will bear the burden of proof at trial." *Id.* Summary judgment is only appropriate if the moving party establishes that there is insufficient evidence favoring the non-moving party for a jury to return a verdict for that party." *Creech v. Ohio Cas. Ins. Co.*, 944 F. Supp. 1347, 1352 (1996).

**B.    Travel Time to and from the Work Site is Not Compensable Under the ECFA.**

The first four counts in Plaintiffs' Second Amended Complaint allege federal and Ohio minimum wage and overtime violations under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.,* and the Ohio Minimum Fair Wage Standards Act ("OMFWSA"), O.R.C. § 4111, *et seq.*   The FLSA and OMFWSA are indistinguishable with respect to Plaintiffs' minimum wage and overtime claims.   Ohio's minimum wage and hour statute, "expressly incorporates the standards and principles found in the FLSA." *Dillworth v. Case Farms Processing, Inc.*, No. 5:08CV1694, 2009 U.S. Dist. LEXIS 76947, at *15 (N.D. Ohio Aug. 27, 2009) (quoting *Thomas v. Speedway SuperAmerica, LLC*, 506 F.3d 496, 501 (6th Cir. 2007)).

Under the FLSA, employees are entitled to be paid only for hours worked and are entitled to overtime of time and one half for hours worked over 40 in one work week. The key factor, of course, is what is counted as "work time" and when does the work day begin. Defendants agree

10

that the general law as Plaintiffs stated is to the effect that once an employee begins to perform non *de minimis* activity which is "integral and indispensable" to the employees principal activity, the work day has begun. But this general concept does not address the specific issue in this case, *i.e.,* when the employer allows the employee to commute in a company vehicle, when does the employee begin to perform "integral and indispensable" activities? The Court does not have to speculate because Congress has passed a specific statute to deal with the issue.

Travel time issues are governed by the Portal-to-Portal Act, 29 U.S.C. § 254(a), which provides that an employer is not required to pay an employee for activities prior to the start of working time such as:

> (1)  walking, riding, or traveling to and from the actual place of performance of the principal activity or activities which such employee is employed to perform, and

> (2)  activities which are preliminary to or postliminary to said principal activity or activities, which occur either prior to the time on any particular workday at which such employee commences, or subsequent to the time on any particular workday at which he ceases, such principal activity or activities.

29 U.S.C. § 254(a). One of the Portal-to-Portal Act's implementing regulations specifically provides that ordinary commuting to the work site is not compensable under the FLSA:

> An employee who travels from home before his regular workday and returns to his home at the end of the workday is engaged in ordinary home to work travel which is a normal incident of employment. This is true whether he works at a fixed location or at different job sites. Normal travel from home to work is not work time.

29 C.F.R. § 785.35.

By the early 1990's, employers had begun to allow employees to commute to work in company-provided vehicles. The Department of Labor began to deal with the implications of this new practice which had not been prevalent in the 1930's and 1940's when the original

legislation had been passed. The U.S. Department of Labor ("DOL") issued conflicting opinion letters in 1994 and 1995, respectively, regarding compensability of travel time when employees were driving or riding in employer owned vehicles while commuting to or from their work sites. The DOL had opined that the time spent traveling in an employer vehicle to or from the first or last work assignment of the day was similar to traveling between jobs during the day and therefore represented a principal activity, which must be compensated (as opposed to the same travel in the employee's own vehicle which would not require compensation). H.R. Rep. No. 104-585 at 2 (1996).

After receiving many letters from Congress voicing concern and opposition to the DOL's position, the DOL suspended enforcement of the 1994 opinion letter. The DOL then issued a revised opinion letter in 1995 withdrawing the 1994 opinion letter and modifying its position on the issue. *Id.* at 3. In its 1995 letter, the DOL opined that travel in an employer's vehicle to or from the first and last work assignment of the day need not be compensated if certain conditions were met.

In 1996, to remedy what it deemed to be an overly restrictive interpretation by the Department of Labor and by some courts[4] which placed too many restrictions on employers, and to give specific guidance on how to handle compensability of travel time when the employer provides transportation to the actual principal place of work, Congress enacted the Employee Commuting Flexibility Act of 1996 (29 U.S.C. § 251) ("ECFA"). The ECFA amended Section 4(a) of the Portal-to-Portal Act by adding the following language:

> For purposes of this subsection, the use of an employer's vehicle for travel by an employee and activities performed by an employee which are incidental to the use

---

[4] The decision cited by Plaintiffs – *Dunlop v. City Elec., Inc.*, 527 F.2d 394 (5th Cir. 1976) – was specifically cited in the legislative history as not showing sufficient flexibility to applying the Portal-to-Portal Act to modern realities. H.R. Rep. No. 104-585 at 11-12.

of such vehicle for commuting shall not be considered part of the employee's principal activities if the use of such vehicle for travel is within the normal commuting area for the employer's business or establishment and the use of the employer's vehicle is subject to an agreement on the part of the employer and the employee or representative of such employee.

29 U.S.C. § 254(a).

In the House Report for H.R. 1227, the Employee Commuting Flexibility Act of 1996 as enacted, Congress stated:

> H.R. 1227 provides clarification regarding the use of an employer-provided vehicle for travel from an employee's home to the first work location at the start of the workday and from the last work location to the employee's home at the end of the workday. Such travel is not considered to be part of the employee's principal activities and therefore, the time spent in such commuting is not required to be compensated under the Fair Labor Standards Act. The limitation applies only if the use of the vehicle is within the normal commuting area for the employer's business or establishment and the use of the employer's vehicle is subject to an agreement between the employer and the employee or the employee's representative. This clarification regarding an employee's "principal activity or activities" applies as well to activities performed by an employee which are incidental to the use of the employer-provided vehicle for travel by the employee at the beginning and end of the workday.

H.R. Rep. No. 104-585 at 4.

It is important to note that neither the Portal-to-Portal Act nor the ECFA is premised on the employee having to start or end his commute at "home." The operative language in the statute is "traveling to and from the actual place of performance of the principal activity." *See*, *Baker v. GTE*, 110 F.3d 28, 30 (7th Cir 1997) (rejecting a claim that the ECFA applied only to home to work travel – "[N]othing in the statute limits its application to employees who drive the company vehicle all the way home. It covers 'use of an employer's vehicle for travel by an employee' and 'activities performed by an employee which are incidental to the use of such vehicle for commuting,' but 'from home' is not in the text and does not modify either 'travel' or 'commuting.' Some of the legislative history mentions the home-to-work commute, doubtless

the normal case, but the text of the law extends beyond the most frequent situation. Statements in committee reports and on the floor of Congress do not modify what the legislature actually enacts.").

Thus, the only two criteria set out in the ECFA to make the commuting non compensable are: (1) that the arrangement be part of an agreement, and (2) that travel be within the "normal commuting area" for the business. Both criteria are both met in this case.

### 1. The Company Vehicles were Provided Pursuant to an Agreement between the Parties

With respect to the requirement that there be an agreement between the employer and employee regarding use of the Company vehicle, Congress clarified that this does not require a written agreement and can simply be an understanding based on Company practices. H.R. Rep. No. 104-585 at 4. In this case, there is no factual dispute based on the deposition testimony that Plaintiffs' use of the Company vehicles was based on an agreement between Reddy and the Plaintiffs. Plaintiffs asked for their own convenience to use Company vehicles for the commute and the Company agreed to their request. See pp. 4-7, *supra*; Eldridge Aff. at ¶ 3.

This case is similar to *Chambers v. Sears Roebuck & Co.*, 428 Fed. Appx. 400 (5th Cir. 2011), in which two Sears in-home service technicians brought suit against Sears for overtime compensation under the FLSA and state law. Both plaintiffs were part of a voluntary program where they chose not to report to a centralized Sears location each day, but rather to report directly to the first customer in the morning and return home from the last customer at the end of the day. *Id.* at 403. The "home technicians" participating in this program were provided with Company-owned vans, which they kept at their homes while not in use. *Id.* Sears paid for all expenses related to the vehicles. *Id.* The Court rejected the employees' argument that

commuting time was compensable, in part because it determined that it was undisputed that the plaintiffs participated in the voluntary home program subject to an agreement. *Id.* at 410.

Similarly, in this case, the undisputed facts demonstrate that the Plaintiffs and Defendants agreed to the commuting arrangement.

### 2. The Travel to and from the Work Site was Within the Normal Commuting Area

The second criteria under the ECFA – that the travel be within the company's "normal commuting area" – is also met in this case. Congress specifically declined to establish a mileage limit with regard to whether an employer's work site is within or outside the "normal commuting area" of the employer's establishment. Instead, the "normal commuting area" language was "intended to recognize the differences that exist between geographic regions, industries, etc. that cannot be easily defined." H.R. Rep. No. 104-585 at 5. In this case, the normal commuting area of Reddy was a two state area in which the Company performed services. Eldridge Aff. at ¶ 2. Employees routinely travel many more than 50 miles each way to job sites. Mr. Eldridge's Affidavit lists the numerous construction sites as far away as Gallipolis, Allen County, Columbus, and Portsmouth. Eldridge Aff. at ¶ 2. By contrast, the Oxford and Arcanum sites are only fifty (50) miles from the Xenia office. *Id.* at ¶ 4.

The Court in *Chambers* also addressed the "normal commuting area." The court cited a 1999 DOL opinion letter to the effect that a home-based employee traveling in a Company van need not be compensated for travel from home to a work site unless the "time involved is extraordinary." *Chambers*, 428 Fed. Appx. at 411 (citing U.S. Dep't Lab. Op. Ltr. (Jan. 29, 1999)). The Court also noted that other courts have held that commutes "far longer" than the 35 minutes at issue in *Chambers* are "within the definition of ordinary home to work travel and are hence non-compensable under the Portal-to-Portal Act." *Id.* at 411 (citing *Smith v. Aztec Well*

*Servicing Co.*, 462 F.3d 1274, 1288-90 (10th Cir. 2006) (commutes up to three and a half hours non-compensable)); *Vega v. Gasper*, 36 F.3d 417, 424 (5th Cir. 1994) (daily commutes of up to four hours non-compensable). In *Chambers*, the Court held that the plaintiffs failed to produce evidence that their commutes were not "normal" for their "employer's business or establishment." *Id.* Similarly, in this case, given the geographic scope of Defendants' work area, the job sites at Arcanum and Oxford are well within the "normal commuting area." Thus, under the ECFA, the travel time to and from the construction work sites is not compensable.

### 3. Simply Carrying Passengers in the Company Vehicle Does Not Entitle Plaintiffs to Compensation.

Plaintiffs apparently concede that they are not entitled to compensation on those occasions when they drove the company vehicle alone. But Plaintiffs, in essence, are asking the Court to simply make up a third ECFA criteria which must be met before a commute is noncompensable, *i.e.,* a criteria that if the employee drives the company vehicle, he must drive alone and not carry any passengers.

Of course, the criteria Plaintiffs seek does not appear in the statute. And, even assuming the Court could rewrite the statute, Plaintiffs' contention defies logic and common sense. It is undisputed that Plaintiffs were well aware the Company policy was that all employees were to provide their own transportation to the principal place of work, *i.e.,* the construction sites. *See,* Handbook (Ex. 1 to Lacy and Syx Deps.); Lacy Dep. at 34:5-17; 38:21—39:4; Syx Dep. at 35:1-9; 40:7-14. If Defendants provided a Company vehicle to each employee who wanted one and had them all drive alone from their homes to the work site, even Plaintiffs would agree that no compensation would be due. If employees carpooled in private vehicles from a central location, no one would contend compensation would be due. Presumably, if the Company provided one vehicle to one employee and other employees voluntarily went to his or her house to "hop a

16

ride," Plaintiffs would agree there would be no compensation due to the driver. There should be no different result just because the Company provided the vehicle at the Company headquarters and the headquarters was the location where the purely voluntary car pooling both commenced and ended. In all the circumstances cited above, the issue is the same — the Company put the burden on the employee to get to the job site on time — whether they drove their own vehicles, whether they car pooled in private vehicles, whether they car pooled in Company vehicles, or whether they drove alone or with others, it is noncompensable under the Portal-to-Portal Act and the ECFA.

The Congressional Committee considering the ECFA set out precisely the same logic when discussing the background of the Portal-to-Portal Act itself:

> The original theory behind the exemption for commuting time was that an employee who is commuting to and from work is on his or her own time. The employee may choose the means by which he or she commutes. The employee may chose [sic] the route by which to go. The employee may perform any errand of his or her choice on the way to, or from, work. **The employee may pick up and drop off passengers as he or she desires**. In short, other than being required to be at a certain place by a certain time, the employee's commuting time has nothing to do with the employer. It is the employee's own time to do with as he or she sees fit. **In such circumstances, regardless of whether the employee is using his or her own vehicle or in the employer's, the employer should not be required to compensate the employee**. No one contends otherwise.

H.R. Rep. No. 104-585 at 13 (emphasis added).

The commute referenced in the legislative history is precisely the type of commute at issue in this case. Plaintiffs had total freedom as to whether to commute on not. They could take any route, stop anywhere and for as long as they wished and had no work duties during the trip. All that Reddy cared about was that they show up to the principal place of employment on time. Just as the legislative history recognized, "other than being required to be at a certain place by a certain time, the employee's commuting time has nothing to do with the employer."

In *Smith v. Aztec Well Servicing Co.,* 462 F.3d 1274 (10th Cir. 2006), the defendant encouraged car pooling arrangements. In that case, rig hands working for a servicing company on oil and gas wells sought payment for travel time to and from the well sites based in part on the theory that transporting employees automatically transferred the travel time into a compensability activity. In *Smith*, just like the situation here, the car pooling was not required, but was entirely voluntary. Crew members were free to spend their time how they wished during the commute. The court held that under the Portal-to-Portal Act, employers are not required to compensate their employees (even those who drove other employees) for time spent traveling to and from the place of their principal activities, and that there was nothing in the statute indicating an exception simply because they traveled with co-workers. *Smith,* 462 F.3d at 1288. The court found that the employees failed to establish that the travel time itself was work for which they must be compensated. *Id.* at 1290.

*See, also, Wirtz v. Marino,* 405 F.2d 938, 942 (1st Cir. 1968).

> In the light of the Portal-to-Portal Act's elimination of travel to and from the job we do not find in the existing precedents any clear instructions advising the defendant that [defendant's] driving to and from his home was compensable as an integral part of and indispensable to his principal activity. It is true that on part of his travel [defendant] was carrying fellow employees. But where recovery is sought for the trip, including [defendant's] own unavoidable travel as distinguished from such extra time as employee pickups required, *D A & S Oil Well [Servicing, Inc. v. Mitchell,* 262 F.2d 552 (10th Cir. 1958)], is opposed to plaintiff's position. Even if that case could be forgotten we could not find the law settled by the district court decision or decisions relied on by the Secretary.

Plaintiffs' citation to *Herman v. Rich Kramer Constr., Inc.,* No. 97-4308WMF, 1998 U.S. App. LEXIS 23329 (8th Cir. Sept. 21, 1998) is unavailing. In the *Herman* case, the employer mandated that foremen report to a meeting place to receive instructions, study blueprints, load large equipment, laborers and supplies, and then travel to the designated workplace. After the return trip, the same foremen filled out timesheets, unloaded and locked trucks and secured

18

equipment. By contrast, in this case, it is undisputed that the Plaintiffs had complete discretion to simply report to their principal place of duty at the work site as per Company policy. Unlike the situation in *Herman*, the Plaintiffs had no non-travel related duties at the headquarters, and anything they did at headquarters was directly related to and merely incidental to the commute.

*Hodge v. Lear Siegler Servs., Inc.,* No. CV06–263–MHW, 2008 U.S. Dist. LEXIS 45128 (D. Idaho June 9, 2008), cited by Plaintiffs, is not applicable. The court's statement that driving might constitute as work was *dicta* given the court's conclusion that the FLSA cannot be applied extraterritorially. In addition, in *Hodge* the company contractually promised to provide transportation (*i.e.*, drivers) to the employees to the work site, whereas, in the case at bar, the burden was entirely on the employees to get to the principal place of employment on their own. Lastly, in *Hodge*, the "driving" issue was not squarely addressed because defendant conceded that the drivers were "working" under the contract and in fact had compensated them for their time. The *Hodge* court also noted with approval the holding in *Smith, supra,* and stated:

> As for the drivers of the vehicles, the court articulated that unless the employee's time was spent predominantly for the employer's benefit, and the employer required work during the major part of the commuting time, the time would not be compensated. When the drivers were merely transporting others and had to arrive at work in any event, even though they discussed work with their subordinates, their task was no different than what a commuter would normally do on a drive to work with or without other passengers.

*Id.* at *29.

The situation in this case is precisely the situation acknowledged in *Smith* and *Hodge, i.e.,* the drivers "had to arrive at work in any event . . . their task was no different than what a commuter would normally do on a drive to work with or without other passengers." *Id.* Thus, the fact that from time to time the Plaintiffs may have driven

other employees in the company vehicles does not negate the applicability of the ECFA –

the commute is not compensable time.

### C. As an Alternate Theory, the Time at Issue is Not Compensable Because the Commute Time was Not Primarily to the Benefit of the Employer

In a different analytical approach which reached the same result, future Supreme Court

Justice Sotomayor in *Singh v. City of New York*, 524 F.3d 361 (2d Cir. 2008), analyzed the

plaintiff's demand to be compensated for commuting time under the "predominant benefit" test.

The court reasoned that the key criteria in determining whether time spent by a worker is

compensable is whether the time "is spent predominately for the employer's benefit or for the

employee's."

> In the commuting context, we believe the appropriate application of the predominant benefit test is whether an employer's restrictions hinder the employee's ability to use their commuting time as they otherwise would have had then been no work related restrictions. Based on this test, we conclude that the mere carrying of inspection documents did not transform plaintiffs' otherwise noncompensable commute into compensable time.

*Singh,* 524 F. 3d at 369.

Applying Judge Sotomayor's logic to this case would result in a ruling for Defendants

since the use of the Company vehicle was for the employees' benefit and the Company placed no

restrictions on employees during the commute so long as they arrived to the work site on time.

Lacy stopped to pick up coffee and snacks and Syx drank coffee, looked outside, and passed the

time by "watching stuff going by" during the trip.  Lacy Dep. at 30:2-12; Syx Dep. at 14:1-4.

### D. Loading Supplies is Not Compensable Because it is Incidental to Commuting and the Time was *De Minimis*

While the travel time itself is not compensable, the occasional loading of small amounts

of supplies is also noncompensable under the ECFA both because it is incidental to the commute

and therefore not part an integral and indispensable part of the employee's principal activities, and because the time is *de minimis*.

### 1. The Loading of Supplies was Incidental to Use of the Company Vehicle

The ECFA specifically provides that activities which are "incidental" to the use of the Company vehicle are not considered to be part of the employee's principal activities and are therefore not compensable. 29 U.S.C. § 254(a). Congress specifically declined to elaborate precisely as to what constitutes an "incidental" act, stating "[i]t is not possible to define in all circumstances what specific tasks and activities would be considered 'incidental' to the use of an employer's vehicle for commuting." H.R. Rep. No. 104-585 at 5. However, Congress made clear that "transporting tools or supplies should not change the noncompensable nature of the travel." *Id.* Thus, the periodic loading and transporting of small amounts of supplies which Plaintiffs testified to in their depositions, even if true, are precisely the type of work incidental to the commute which Congress specifically declared to be noncompensable.

In the Minority Report, Congress Members opposed to H.R. 1227 expressly recognized that the Bill as proposed (and as passed) would render noncompensable certain employee activities that the minority thought would be compensable if they were performed after the work day began. As the Minority Report correctly recognized:

> H.R. 1227 enables employers to require employees to perform services for free that employers are otherwise required to pay for under current law. The employer can require the employee to **load the vehicle**, to fuel the vehicle, to maintain the vehicle, to take job assignments, or to perform any other duty "incidental" to the commute without paying the employee for those services.

H.R. Rep. No. 104-585 at 14 (emphasis added). Congress, after considering the language of the Minority Report, passed the Employee Commuter Flexibility Act in 1996 as proposed.

21

The Circuit Courts have quite properly relied heavily on the House Report for H.R. 1227, including the Minority Report, in making determinations that loading or transporting work material in an employer vehicle are incidental to the commute and are not compensable under the ECFA. *See, Chambers v. Sears Roebuck & Co.*, 428 Fed. Appx. 400 (5th Cir. 2011) (affirming summary judgment in favor of employer, quoting legislative history from House Report on ECFA amendments); *Rutti v. Lojack Corp., Inc.*, 596 F.3d 1046 (9th Cir. 2010); *Singh v. City of New York*, 524 F.3d 361 (2d Cir. 2008) (future Supreme Court Justice Sotomayor extensively analyzed the Portal to Portal Act and ECFA in ruling that carrying supplies needed once an employee arrived at the work site does not make commute time compensable).

The legislative history and the case law interpreting the ECFA make it clear that a company can impose conditions on an employee's use of vehicles for commuting (such as loading supplies) without turning the commute into compensable time. *See, e.g., Rutti v. Lojack Corp., Inc.,* 596 F.3d 1046 (9th Cir. 2010). In *Rutti,* the plaintiff sought compensation for the time spent commuting to work sites in the defendant's vehicles and for time spent on preliminary and postliminary activities. The district court granted summary judgment for defendant holding that plaintiff's commute was not compensable as a matter of law and that the preliminary and postliminary activities were not compensable because they either were not integral to Rutti's principal activities or they consumed a *de minimis* amount of time. The Ninth Circuit affirmed the decision. The court noted that Congress recognized that employers could place conditions on the employees' use of vehicles and that the loading and transportation of tools and supplies was an acceptable condition which did not make the commute compensable. *Id.* at 1053.

Similarly, in *Chambers,* among other duties, home-based technicians received UPS packages containing "truck stock replenishment parts" at their homes sometimes daily or weekly,

depending on usage. *Id.* The home technicians were instructed to load the boxes of parts into the van at a time of their choosing. *Id.* The court ruled that this activity was incidental to use of the vehicle and was not compensable.

In *Chambers*, the plaintiffs, just as Mr. Syx and Mr. Lacy, claimed that since they occasionally transported tools and parts in the company van during the morning and evening commutes, the commute time was compensable. The Fifth Circuit was "entirely unpersuaded" by this argument, stating:

> Nothing in the statutory scheme requires, or even implies, that such conditions on an employee's use of a company car, including the transportation of parts or tools, can transform an otherwise non-compensable commute in to a compensable one. In fact, the ECFA expressly provides that "activities performed by an employee which are incidental to the use of [the employer's] vehicle for commuting shall not be considered part of the employee's principal activities." 29 U.S.C. § 254(a). Again, Plaintiffs cite no authority for the proposition that conditions like those Sears placed upon Plaintiffs' use of the company vans make commute time compensable under the ECFA. Moreover, reported decisions do not support Plaintiffs' contentions.

*Chambers*, 428 Fed. Appx. at 412.

Thus, under the case law and the ECFA, occasional loading of supplies into a company vehicle is incidental to the commute and is not compensable.[5]

---

[5] Plaintiffs argue (without addressing the dispositive "incidental" language in the ECFA) that preliminary or postliminary activities are excluded from FLSA coverage when (1) such activities are predominantly in the employee's own interest, (2) are undertaken for the employee's own convenience, (3) are not required by the employer, and (4) are not necessary to the employee's performance of his or her work duties. See Plaintiffs' Memorandum at 34-35. Even if this was the correct standard, in this case, all four of Plaintiffs' criteria are met. Given the Plaintiffs' deposition testimony, there is simply no dispute that using the Company vehicles was predominantly in the employees' own interest and at the employees' own request, commuting in the vehicles was not required by the employer, and was not necessary to the performance of the employees' duty, which was to show up ready to work at the construction sites. The Company did not care how Plaintiffs got there – under the undisputed work policy it was up to plaintiffs to appear ready to work at the work site.

### 2. Plaintiffs' *De Minimis* Time Loading or Unloading Trucks was Not Compensable

Even if the Court somehow concluded that Plaintiffs' occasional transporting of material was not "incidental" to using the Company vehicle, the time would still be noncompensable because the time spent was *de minimis*. "[W]hen 'the matter in issue concerns only a few seconds or minutes of work beyond the scheduled working hours, such trifles may be disregarded.'" *Singh*, 524 F.3d. at 370 (quoting *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 692 (1946)). In *Chambers*, the court analyzed a list of activities that the plaintiffs claimed they performed before and after the work day, including loading boxes of parts into their work vans as needed, and unpacking and storing the parts, which, together with the other activities, plaintiffs testified took them anywhere from 10 to 30 minutes per day in the morning and another 10-30 minutes per day in the evening. The Court held that even if all of the activities were integral rather than incidental, they still would not be compensable because the time spent in doing them was *de minimis*. The Court stated:

> [B]ecause there is no evidence that transporting the parts and tools increased technician's commute times in the slightest, this activity is also de minimis. The daily SST activities and transportation of parts and tools are not compensable.

*Chambers*, 428 Fed. Appx. at 418.

The Court in *Singh* reached a similar conclusion, holding that the alleged extra commuting time from carrying supplies was *de minimis* because the extra time was practicably difficult to record, the size of the claim in the aggregate was small and the claimants did not perform the work on a regular basis. *Singh*, 524 F.3d at 369-70.

Most courts have determined that daily amounts of time up to 10 -15 minutes are *de minimus*. "Most courts have found daily periods of approximately 10 minutes *de minimis* even though otherwise compensable. *See, e.g., E.I. du Pont de Nemours & Co. v. Harrup*, 227 F.2d

24

133, 135-36 (4th Cir. 1955) (10 minutes); *Green v. Planters Nut & Chocolate Co.*, 177 F.2d 187,

188 (4th Cir. 1949) ("obvious" that 10 minutes is *de minimis*); *Carter v. Panama Canal Co.*, 314

F. Supp. 386, 392 (D. D.C. 1970 (2 to 15 minutes), *aff'd*, 150 U.S. App. D.C. 198, 463 F.2d

1289 (D.C. Cir.), *cert. denied*, 409 U.S. 1012, 34 L. Ed. 2d 306, 93 S. Ct. 41 (1972); *see also*

*Hodgson v. Katz & Besthoff, #38, Inc.*, 365 F. Supp. 1193, 1197 n.3 (W.D. La. 1973) (summary

of *de minimis* holdings)." *Lindow v. United States*, 738 F.2d 1057, 1062 (9th Cir. 1984).

　　　　Plaintiffs contend that when determining whether otherwise compensable time is *de*

*minimis*, courts should "consider (1) the practical administrative difficulty of recording the

additional time; (2) the aggregate amount of compensable time; and (3) the regularity of the

additional work." *Lindow*, 738 F.2d at 1063.  Under those standards, neither Plaintiff is entitled

to additional compensation.  It is clearly difficult to record scattered times ("5 to 15 minutes")

spent loading or unloading small amounts of material before or after the vehicle gets back to

headquarters.  The aggregate amount of allegedly unpaid time is very small, especially

considering the extra 15 minutes pay each plaintiff received on daily basis, which should be set

off against any actual unpaid time worked.  *See,* footnote 3, *supra*.  And the regularity of the

additional work is either nonexistent (for Syx) or factually disputed in the case of Lacy.

　　　　Under the applicable case law, Syx's time (scattered minutes once or twice every other

week) is clearly *de minimis*.  In this case, Syx testified that he only loaded supplies once per

week for five (5) to fifteen (15) minutes for several weeks.  See discussion, *supra*, at 7-8.  Thus,

even if Mr. Syx is being truthful, under all the applicable case law, the time he spent loading and

unloading is *de minimis* and summary judgment should be granted against him.[6]

---

[6] In the one instance referenced where Syx unloaded material for 30 minutes, he was given additional paid time off in the same work week. See Ex. A at ¶ 5.

Lacy's claims (while factually erroneous) are that he spent **up to** 20 minutes 3-4 days per week loading or unloading. See discussion, *supra*, at 7. There is a factual dispute on this point since his daily commuting companion, Mr. Burns, stated that Lacy did not load or unload supplies except on extremely rare occasions and never for more than a few minutes. Burns Aff. at ¶ 4. But even if Lacy's recollection is correct, the time is not compensable because the time spent was *de-minimis*. Even if Mr. Lacy really did spend 80 minutes per week ("up to" 20 minutes four days a week) loading and unloading trucks, this time is covered by the undisputed extra 75 minutes each week that he received via the extra 15-minute paid lunch break. By any standard, 5 minutes per week of alleged unpaid time is *de minimis*. But if the Court rejects Defendants' arguments both that the time alleged by Mr. Lacy is incidental to the commute and that the time is *de minimis* as a matter of law, the factual dispute as to the actual amount of time actually worked would preclude a summary judgment decision for Lacy.

Just as in *Chambers* and *Singh*, the activities that Plaintiffs claim they engaged in before and after commuting to and from the job sites occasionally loading and transporting small amounts of supplies were directly related to and incidental to their commute and were also *de minimis*.

**E.     The Continuous Workday Rule is Not Applicable**

Plaintiffs' contention that the "continuous workday rule" entitles them to an additional three hours of compensation per day because they occasionally loaded the vehicle is erroneous. The continuous work day rule simply means that the work day is generally defined as "the period between the commencment and completion on the same work day of an employee's principal activity or activities." 29 C.F.R. § 790.6(b). The inapplicability of this concept to this case only requires the Court to read the ECFA – tasks incidental to the commute, including loading the

vehicle, are by law not an integral or indispensible part of the employee's principal activities. H.R. Rep. No. 104-585 at 4-5.

As the Supreme Court in the *Alvarez* decision cited by Plaintiffs noted, "The fact that certain preshift activities are necessary for employees to engage in their principal activities does not mean that those preshift activities are 'integral and indispensible' to a principal activity." *IBP v. Alvarez,* 546 U.S. 21, 40 (2005). The *Alvarez* court noted that "walking from a time clock near the factory gate to a workstation is certainly necessary for employees to begin their work, but it is indisputable that the Portal-to-Portal Act evinces Congress' intent to repudiate [a 1946 Supreme Court case] holding that such walking time is compensable under the FLSA." *Id.* at 41. In this case, since the loading of the vehicle was incidental to the commute under the ECFA and was *de minimis*, the continuous work day rule simply does not apply. *See, also, Singh, supra,* at 372 (court held that *de minimis* activities do not start the "continous workday").

1.    **Plaintiff's Cases are Distinguishable**

The other cases Plaintiffs cite do not squarely deal with commuting issues or are factually distinguishable.

Plaintiffs cite to *Ross v. Wolf Fire Prot., Inc.,* 799 F. Supp. 2d 518 (D. Md. 2011), a case in which the district court found that the employees' travel time was "work." The critical difference between the situation in *Ross* and this case is that the employer in *Ross* "required that the pipefitters pick up and sign for equipment" because the employer did not want expensive pieces of equipment to be delivered to the jobsite and left there. *Id.* at 524. Here, the Plaintiffs had the option to take one of the Company's trucks for their commute, but could have taken their own vehicles at any time. Likewise, the Company did not require the Plaintiffs to sign for any equipment or otherwise become personally responsible for the equipment's safe delivery to the worksite. *Ross* is distinguishable from this case.

Plaintiffs similarly cite to *Herman v. Rich Kramer Constr., Inc.*, No. 97-4308WMF, 1998 U.S. App. LEXIS 23329, at *7 (8th Cir. Sept. 21, 1998) for the proposition that "shop time" was compensable "when an employer **required** employees to report to a shop." Plaintiff's Memorandum at 55 (emphasis added). While the court in *Herman* found that the brief shop time was beneficial to the employees, the court found that because it benefitted the employer, it had to be paid time. *Id.*[7] Subsequent cases, however, have found that by providing transportation to employees, any work related to the commute would be incidental to the primary benefit of helping the employee get to work. For instance, in *Dooley v. Liberty Mut. Ins. Co.*, 307 F. Supp. 2d 234, 247 (D. Mass. 2004), the district court found that the transportation of light equipment from employees' homes to work, and back from work to home, did not constitute a principal activity. *Id.* The district court emphasized that the Portal-to-Portal Act was clearly written in favor of employers. *Id.* Further, the district court distinguished *Herman*, indicating that *Herman* found that the work was compensable due to "additional responsibilities or the extensive nature of the equipment being transported." *Id.* at 248. In *Dooley*, the items being transported were not substantial, so the time doing so was not compensable. *Id.* at 248.

Plaintiffs further cite to *Dunlop v. City Elec., Inc.*, 527 F.2d 394, 400 (5th Cir. 1976) for the proposition that "an electrician's pre-work activities of preparing supply requests, loading trucks, and cleaning equipment are an integral part of an employee's principal activities." Plaintiff's Memorandum at 55. Yet again, the tasks the employees performed in *Dunlop* were required activities that "were to be completed before 8:00 a.m. to enable the men to depart from the shop by the beginning of the paid workday." *Id.* at 397.

---

[7] Other courts have questioned whether the ruling in *Herman* allows an employee to be compensated for activities that *primarily* help the employee while only *incidentally* helping the employer. *See, Helmut v. Butterball*, 805 F. Supp. 2d 655, n.4 (D. Ark. 2011), stating that "[t]his Court is not convinced that *Herman* stands for the proposition that an employer need only derive some – but not the primary – benefit from an activity for it to be compensable."

The Fifth Circuit in *Dunlop* opined that activities that are not work and do not require pay are activities undertaken "for [the employees'] own convenience, not being required by the employer and not being necessary for the performance of their duties for the employer." *Id.* at 399 (internal citation omitted). Subsequent cases have stated that time spent at the end of the day, such as "end-of-day reports and transportation of tools are activities incidental to [the employee's] use of a company vehicle for commuting." *Buzek v. Pepsi Bottling Group, Inc.*, 501 F. Supp. 2d 876, 886-887 (S.D. Tex. 2007). As the district court in *Chambers* followed the rationale in *Buzek*, and the Fifth Circuit fundamentally adopted the district court's rationale, the Fifth Circuit overruled *Dunlop's* holding *sub silento*, or, at a minimum, limited its authoritative value so much that it cannot reasonably be dispositive in this case.

The Plaintiffs cite *Hodgson v. Frisch's Dixie, Inc.*, No. 6641, 1971 U.S. Dist. LEXIS 12029, at *11 (W.D. Ky. Aug. 16, 1971), to show that that cleaning equipment and preparing for the next day were compensable. Plaintiffs' Memorandum at 55. However, the employees in *Hodgson* were servers at a Big Boy restaurant who were required to undertake various non-tipped activities after their shift without being paid minimum wage. There was no discussion of commuting time, the Portal-to-Portal Act, or any other factual issue that might make this forty-one year-old unreported case from another district court germane to this case in any conceivable way. Plaintiffs similarly cite to *O'Brien v. Encotech Constr.*, No. 00-CV-1133, 2004 U.S. Dist. LEXIS 4696, at *17 (N.D. Ill. Mar. 23, 2004). In *O'Brien*, the employees had the option to either fill water tanks needed for concrete cutting at the employer's yard or at the job site, but the employees were required to fill the tanks one way or another. *Id.* at *8-9. Again, in this case, the Plaintiffs always had the option to drive their own vehicles, which would have allowed them to avoid having to load the Company truck entirely. *O'Brien* is simply not applicable.

Lastly, Plaintiffs cite to *Breen v. Concrete By Wagner, Inc.*, No. 98 C 3611, 1999 U.S. Dist. LEXIS 17401, at *37 (N.D. Ill. Nov. 4, 1999), which also found FLSA violations because the employer did not pay travel time from shop to job site and vice versa when the employer **required** employees to report to the shop, *i.e.,* the work day began there. Plaintiffs' Memorandum at 55 (emphasis added). This case does not hold that the employer must pay wages when the employee has the last and final say whether he drives a company vehicle or his own car to the final work site.

> **F.     Plaintiffs Were Properly Compensated for All Time Worked Under Defendants' Lawful Rounding Practice**

Plaintiffs' claim that Defendants did not fairly "round" Plaintiffs' time is contradicted by the time records themselves. Defendants, not Plaintiffs, are entitled to summary judgment on this claim.

The DOL regulations expressly approve of employer rounding practices. 29 C.F.R. § 785.48 provides:

> (a)     Differences between clock records and actual hours worked. Time clocks are not required. In those cases where time clocks are used, employees who voluntarily come in before their regular starting time or remain after their closing time, do not have to be paid for such periods provided, of course, that they do not engage in any work. Their early or late clock punching may be disregarded. Minor differences between the records and the actual hours worked cannot ordinarily be avoided, but major discrepancies should be discouraged since they raise a doubt as to the accuracy of the records of the hours actually worked.

> (b)     "Rounding" practices. It has been found that in some industries, particularly where time clocks are used, there has been the practice for many years of recording the employees' starting time and stopping time to the nearest 5 minutes, or to the nearest one-tenth or quarter of an hour. Presumably, this arrangement averages out so that the employees are fully compensated for all the time they actually work. For enforcement purposes, this practice of computing working time will be accepted, provided that it is used in such a manner that it will not result, over a period of time, in failure to compensate the employees properly for all the time they have actually worked.

"While few Courts have interpreted this regulation [29 C.F.R. § 785.48(b)], those that have recognize that the regulation permits employers to use a rounding policy for recording and compensating employee time as long as the employer's rounding policy does not 'consistently result[] in a failure to pay employees for time worked.'" *Eddings v. Health Net, Inc.*, No. CV10-1744-JST, 2011 U.S. Dist. LEXIS 115989, at * 10-11 (C.D. Cal. Mar. 23, 2012) (quoting *Sloan v. Renzenberger, Inc.*, No. 10-2508-CM-JPO, 2011 U.S. Dist. LEXIS 41018, at *8 (D. Kan. Apr. 15, 2011)). "[A]n employer's rounding policy practices comply with § 785.48(b) if the employer applies a consistent rounding policy that, on average, favors neither overpayment nor underpayment." *Id.* at *11 (citing *East v. Bullock's, Inc.*, 34 F. Supp. 2d 1176, 1184 (D. Ariz. 1998) (granting summary judgment in employer's favor where "evidence show[ed] that [employer's] rounding system may not credit employees for all the time actually worked, but it also credits employees for time not actually worked" so that the employer's "rounding practices average[d] out sufficiently to comply with § 785.48(b)")). *See, also, Adair v. Wis. Bell, Inc.*, No. 08-C-280, 2008 U.S. Dist. LEXIS 68942, at *30 (E.D. Wis. Sept. 11, 2008) (approving policy where there was no evidence to suggest it systematically favored employer); *Contini v. United Trophy Mfg.*, No. 6:06-cv-432-Orl-18UAM, 2007 U.S. Dist. LEXIS 42510, at *10 (M.D. Fla. June 12, 2007) (granting employer's motion for summary judgment where the "[employer], throughout [the employee's] employment, [used] a consistent policy as to the rounding of clocking-in and clocking out, which [was] both fair and evenly applied to all employees.").

In this case, Defendant did round time in 15 minute increments when a Plaintiff logged in after the normal starting time at the construction site. At the construction sites, employees logged in using the supervisor's cell phone under his supervision. Yankee Aff. at ¶ 4; Lacy Dep. at 19-24; Syx Dep. at 9-18. Employees who logged in early did not begin to work until the

31

standard starting time. As the Affidavit of Cheryl Yankee, Reddy's Services Safety Coordinator, demonstrates, the automated rounding process did not systematically deprive either Plaintiff of pay earned. In fact, when factoring in the undisputed fact that each Plaintiff was given 45 minutes off for lunch at the construction sites but only docked 30 minutes pay, Mr. Lacy was overpaid 24.37 hours, and Mr. Syx was overpaid 63.28 hours during the time they worked at the construction sites. Yankee Aff. at ¶ 8.

During the period when Lacy worked at the shop in Xenia, the log in procedures were different in that employees logged themselves in at their convenience. Yankee Aff. at ¶ 9. Regardless of when employees logged themselves in, they did not begin to work until the standard 7:30 a.m. start time. Employees worked and were paid for an eight-hour day. Lacy was fully paid for the time he actually worked at the shop. *Id.*

Plaintiffs' contention that Defendants' Controller, Julie Jordan, testified differently in her deposition is unfounded. Ms. Jordan made it clear in her deposition that she did not know the details of the Company's rounding policy. Defendants' counsel objected on the lack of foundation, but Plaintiffs' counsel continued his line of questioning. Jordan Dep. at 94:10-95:4. The very testimony cited by Plaintiffs demonstrates that Ms. Jordan did not know how the rounding process worked:

> I guess. I said quarter. It must be half hours. I don't know. That might have been an error. I did say quarter. I guess I would have to verify that. But I believe -- I know it rounds so --... Yeah. I would have to verify that. Jordan Dep. at 88-91.

*        *        *

> Well, I would have to check because, even though his clock time says shop time, he may have actually been out on the road and they may have done an automatic lunch for him because they always stopped and ate their lunches. I would have to --... I don't know about that one. I don't know. But . . . . Jordan Dep at 91.

By contrast, Cheryl Yankee, Defendants' Service Safety Coordinator, testified via Affidavit that "I am also the person who was most familiar with the "rounding" process which is used at those work sites and the way in which the lunch break is compensated." Yankee Aff. ¶ 1. Ms. Yankee not only explained the process by which the 15 minute rounding occurred, she also analyzed all of the daily time records and concluded that both Plaintiffs were paid for all the time due under the valid rounding system. Yankee Aff. at ¶ 10.

Furthermore, any time that was rounded away under Reddy's rounding practice was *de minimis*, and, therefore, not compensable. In general, employees cannot recover for otherwise compensable time if it is *de minimis*. *Lindow v. United States*, 738 F.2d 1057, 1062 (9th Cir. 1984). According to the Supreme Court,

> Split-second absurdities are not justified by the actualities of working conditions or by the policy of the Fair Labor Standards Act. It is only when an employee is required to give up a substantial measure of his time and effort that compensable working time is involved.

*Id*. (citing *Anderson*, *supra*, at 692).

### G. Plaintiffs' Claim for Violation of the Ohio Constitution is Inaccurate Because Counsel Jointly Agreed to Postpone Production Pending Settlement Discussions and the Discovery Process

The Plaintiffs' contention that Defendants' "failure" to provide Mr. Lacy's payroll records[8] which the Plaintiff requested is a violation of Ohio Revised Code Chapter 4111 and Art. 2, § 34a of the Ohio Constitution is erroneous. The Plaintiffs acknowledge that "this requirement may be waived by agreement between the parties." *See*, Plaintiffs' Memorandum at page 63. As the Affidavit of Defendants' former counsel, Laura Wilson[9] demonstrates, she and

---

[8] It should also be noted that, contrary to Plaintiffs' contention, the documentation required to be produced under Ohio law is quite limited (name, address, occupation, pay rate, hours worked for each day worked, and each amount paid for the specific employee who has requested his/her own information) and is nowhere near the voluminous personnel file and other records requested by the Plaintiff. Ohio Rev. Code § 4114.14(G)(1).

[9] Ex. B to Defs' Mot. Summ J. (Doc. 71).

Plaintiffs' counsel verbally agreed to defer production of any records pending settlement discussions. See Wilson Aff. at ¶ 4. Ms. Wilson is no longer affiliated with Coolidge Wall Co., L.P.A., and is presently General Counsel at Central State University. Jordan Dep. at 140:22-25.

The Affidavit submitted by Plaintiff Lacy denying there was an agreement is not admissible and does not contradict Ms. Wilson's Affidavit. To be admissible, statements in an affidavit must be based on personal knowledge and "personal knowledge is knowledge of factual truth which does not depend on outside information or hearsay." *Shah v. Getz*, No. 93WD117, 1994 Ohio App. LEXIS 2780, at *3 (6th Dist. June 30, 1994); *Lyons v. Core Sys., L.L.C.*, No. 2:10-CV-75, 2011 U.S. Dist. LEXIS 106368, at *13 (S.D. Ohio Sept. 21, 2011); *Brooks v. Longcore*, No. 1:11-cv-1060, 2012 U.S. Dist. LEXIS 141625, at *8 (W.D. Mich. June 15, 2012); *Wuliger v. Eberle*, 414 F. Supp. 2d 814, 818 (N.D. Ohio 2006) ("It is axiomatic that affidavit evidence must be based upon personal knowledge."). Mr. Lacy can certainly testify that he personally did not agree to defer production of documents, but he cannot possibly have personal knowledge to whether his counsel ever entered into such an agreement. Based on the Wilson Affidavit, there is simply no dispute at this point that Plaintiffs counsel did agree to postpone production of any documentation. Therefore Plaintiffs' Motion for Summary Judgment on the Ohio constitutional count should be denied.

### H. There is No Factual Basis For Granting Summary Judgment On The Issue of Defendants' Good Faith

Plaintiffs' contention that the award of liquidated damages in this case is suitable for a summary judgment finding is also erroneous. The ECFA clearly applies to the facts of this case and should preclude any liability. But, to the extent the Court were to find, in spite of factual background, that a violation occurred, there is simply no evidence that the Defendants acted in bad faith or without reasonable grounds for believing that their conduct was entirely legal.

Accordingly, Plaintiffs' Motion for Summary Judgment on the issue of the liquidated damages is inappropriate and should be denied.

## I.    The New Claim of Off-the-Clock Work at the Construction Site

The newest claim that Plaintiffs worked off the clock at the construction site is contradicted by their earlier deposition testimony and by affidavits of the responsible Company officials.  Both Plaintiffs admitted in their first deposition session that they did not perform any work at the constuction site until after they logged in with the foreman:

Q.  Did you perform any work at the job site before you would clock in?

A.  No.

Lacy Dep. at 20:4-8.

Mr. Syx testified similarly to the effect that he would only log in at "the time that you were at the work site ready to work." Syx Dep. at 14:13-15.

In addition to the conflict in their own testimony, the foremen who actually observed what they did at the construction sites testified through Affidavits that neither Plaintiff performed services prior to logging in at the work sites.  See Ex. A ("Wicker Aff.") at ¶ 4 and Ex. B ("Baker Aff.") at ¶ 2.

In the second deposition session, after Plaintiffs' counsel decided to advance a claim that the rounding policy was illegal, each Plaintiff claimed, for the first time, that they actually performed work at the construction sites before they logged in to the electronic system.  But Plaintiffs cannot create a question of fact by giving contradictory testimony.  Even if the Court were to conclude that Plaintiffs created a question of fact by their own conflicting testimony, the time they claim is *de minimis*.  See discussion at 20-25, *supra*.

35

## III.    CONCLUSION

For the foregoing reasons, Plaintiffs' Motion should be denied in its entirety.   In fact, Defendants are entitled to judgment as a matter of law on all claims asserted by Plaintiffs as established in the Memorandum in Support of Defendants' Motion for Summary Judgment.

Respectfully submitted,

s/ C. Mark Kingseed
C. Mark Kingseed (0024597)
COOLIDGE WALL CO., L.P.A.
33 W. First Street, Suite 600
Dayton, OH  45402
Phone: 937-223-8177
Fax:  937-223-6705
E-mail:  kingseed@coollaw.com

TRIAL ATTORNEY FOR DEFENDANTS
REDDY ELECTRIC CO. AND
JEFFREY ELDRIDGE

Of Counsel:

Allison D. Michael (0071055)
33 W. First Street – Suite 600
Dayton, OH  45402
Phone:  937-223-8177
Fax:  937-223-6705
E-mail:  michael@coollaw.com

<u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on this 9th day of October, 2012, the foregoing *Defendants' Response in Opposition to Plaintiffs' Motion for Partial Summary Judgment* was filed electronically.  Notice of this filing will be sent to all parties by operation of the Court's CM/ECF and copies will be mailed via U.S. Mail to those parties to whom  electronic notice has not been sent.  Parties may access the filing through the Court's system.

<u>s/C. Mark Kingseed</u>
Attorney at Law

w:\wdox\client\641790\00583\00599402.doc